THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. WILLIAM BENSON, Plaintiff in Error.

*Opinion filed June 16, 1926.*

CRIMINAL LAW—*reckless driver of an automobile may be convicted of assault.* A driver of an automobile may be convicted on a charge of assault with a deadly weapon where the evidence shows that in allowing his car to collide with another his conduct was, beyond a reasonable doubt, so reckless, wanton and willful as to show an utter disregard for the safety of others, without regard to whether he had a specific intent to strike or collide with the other car at the time.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

WILLIAM P. CHURCHILL, and P. A. RATTRAY, (HENRY L. COWLIN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, A. William Benson, was jointly indicted with one Irvin Hutchinson in the criminal court of Cook county for an assault with a deadly weapon, an automobile. The indictment charged that the assault was willfully and maliciously made in and upon Leo Addison with intent then and there to inflict upon his person a bodily injury, and that the assault was without any considerable provocation and under circumstances showing an abandoned and malignant heart. The jury was waived and upon the

trial the court found both defendants guilty as charged and sentenced plaintiff in error to six months in the county jail and imposed a fine of $50. Hutchinson was sentenced to three months in the county jail and fined $10. The Appellate Court for the First District affirmed the judgment as to the plaintiff in error and reversed it as to the other defendant. Benson sued out this writ of error to review the record.

About 9:30 A. M. on October 14, 1923, the prosecuting witness, Leo Addison, accompanied by his wife and two children and George Maierhofer and wife, were driving on a public highway known as Rand road, between Chicago and Crystal Lake, in a Chevrolet automobile. At a point about two miles west of Desplaines they passed a Ford coupe containing one seat, driven by plaintiff in error. The Ford coupe was occupied by plaintiff in error, sitting on the left end of the seat; Hazel Harm, sitting by him on the right; Irvin Hutchinson, sitting on the right end of the seat; and Thelma Peterson, sitting in Hutchinson's lap with her arm around his neck and shoulders. There is a dispute in the evidence as to whether or not Benson, the driver of the Ford coupe, had his arm around the Harm girl as the Chevrolet car passed the Ford car. Addison and Maierhofer both testified that Benson, the driver of the Ford, did have his arm around the Harm girl, while the Harm girl and Benson denied that in their testimony. The defendants were each twenty-one years of age and lived at Crystal Lake. They hired the Ford coupe on Saturday afternoon, the day before the collision, and told the owner of the car that they intended to drive to Lake Geneva and would return on the next day, Sunday. They changed their minds and drove to Chicago, stayed all night there and started back from Chicago about eight o'clock A. M. Mrs. Maierhofer testified that when she saw the Ford coupe in front of the car she was in, one of the fellows in the Ford had his arm around a girl, but she does not make it clear whether

it was Benson, the driver, or Hutchinson. All of the parties in the Chevrolet testified that as they passed the Ford coupe George Maierhofer called out to the parties in the Ford car, "Here! Cut it out!" and that he was addressing his remarks to the party that had his arm around the girl, as well as to the girl who had her arm around Hutchinson's neck and shoulders. It appears to be the theory of the parties in the Chevrolet car that the defendants took offense at this remark, and for that reason the defendants undertook a little later to pass the Chevrolet and intentionally collided with that car. It does not appear from the evidence of any one of the four parties in the Ford coupe whether or not any of them heard the said remarks addressed to them by Maierhofer.

The record shows without dispute that the Chevrolet car, after passing the Ford coupe, had only driven about two city blocks when the driver was signaled by the driver in the Ford coupe that the latter intended to pass him, and that Addison, in the Chevrolet, immediately pulled his car to the right side of the road and gave to the Ford car the entire left side of the road for it to pass. Addison testified at this point that as the Ford car was passing him on the left he could see that it was headed right for his car; that the front wheel of the Ford struck the front end of his car or the front wheel, locked the driving power of the Chevrolet, and that the pull on the latter car turned it over and threw its occupants under the car, the car turning with the bottom side up. He further testified that his car was going between twenty-five and thirty miles an hour when it was hit and that the chassis of the car laid on top of the occupants after it turned over; that the back of the front seat of his car was across his back but his shoulders were free; that he managed to draw himself out from underneath the car, and that a man by the name of Schmidt, who was following him in another automobile, then came up and helped him to lift his car off of the other occupants. The two

women in the Chevrolet were pretty badly injured, Mrs. Addison having her collar bone broken and also sustaining other injuries. Addison took the license number of the Ford coupe and asked the defendants, who were strangers to him, their names. The defendants told him that their names were Ben Anderson and Carl Carlson and that their residence was Barrington, and there is no dispute in the record that the defendants thus mis-stated their names and their residence. At the time of the collision there was no car approaching the cars in question from the opposite direction. The evidence shows without dispute that the road at the point of the collision was sufficiently wide for two cars to pass comfortably and safely and leave five or six feet between them, and that the Chevrolet, when the collision occurred, was close to the right-hand side of the road, leaving to the Ford coupe all the remainder of the road to the left of that car. All of the occupants of the Chevrolet were more or less injured, and they were all very positive in their testimony that the Ford coupe collided with the front part of the Chevrolet and that the four fenders of the latter car were broken, and that the Ford car, as it was passing the Chevrolet, was within two or three feet of the latter car, and that as the front end of the Ford got even with the front end of the Chevrolet the Ford cut into the right and struck the other car.

Otto E. Schmidt testified that the Ford coupe passed him before it passed the Chevrolet and that witness was then driving between thirty and thirty-five miles an hour, and that he remarked to his wife as the Ford passed that it was going a pretty lively clip with four people in it; that the witness then drove probably from one to two miles and that the Ford increased its distance ahead of him, and that the next thing he noticed was the Ford passing the Chevrolet, and that as it did so it pulled to the front of the car and that this other car tipped over,—upside down. He noticed, also, that the Ford stopped about a city block ahead

of the upturned car, and the witness then rode up to the wrecked car, and with others who were gathering around he assisted in extricating the occupants of the Chevrolet after turning the car back on its wheels. He also testified that he could not swear that the first car was trying to ditch the other, as he was too far off. He examined the Ford car and found several bad dents on the right side, toward the back end, and that the right rear fender was dented, and he also noticed a number of scratches on it. He also stated on cross-examination that he could not swear that the Ford struck the Chevrolet, and that he just looked at the right side of the Ford, "where I imagine the two cars came together."

All four of the occupants of the Ford coupe testified at the trial, and every one of them stated, in substance, that they did not feel any jar or jolt of their car as they passed the Chevrolet. Plaintiff in error testified that he was absolutely sure that he did not strike the Chevrolet as he passed it, and further stated that he examined his car after the accident and found no marks on the right-hand side of the car or on the fenders, and that he had both hands on the wheel of his car when he passed the Chevrolet. He further stated that there was a space of about six feet between the end of his car and the front end of the other car, and that there was a space of about two feet on the right-hand side of the other car and the edge of the pavement when he passed it, and that he did not know when he went back to the upturned car that he was blamed for the accident. He further stated that he examined his car after he got to Crystal Lake and that the rear hub then had a slight dent in it which was rusty, and that there were no marks on the other hub-caps. They all stated that after they had passed the Chevrolet about a city block Miss Peterson exclaimed, "Why, a car has turned over!" Miss Peterson stated that there was all of three feet between the two cars as they were passing; that they were going straight and did not turn in

321—39

on the right, and knows absolutely that the front part of their car did not strike the other car. She did not state, and the Harm girl and Irvin Hutchinson did not state in their testimony, that the Ford car did not strike the Chevrolet as it passed it.

On rebuttal, Leo Addison testified that three or four days after the accident he had a talk with Benson and Hutchinson concerning this accident. He testified that in speaking about the affair that he thought just after the Chevrolet had passed them that it would be fun for them to pass the Chevrolet, and that was the reason he gave for them passing that car. He also stated, and so did Benson when he interviewed him, that they did not know they were so close or would come so close to the Chevrolet as to hit it. Benson also stated in his examination in chief that after the Chevrolet first passed his car "we were traveling about twenty-five miles an hour at that time and then we picked up speed to go by them, as we wanted to get out to Crystal Lake about noon." He did not give any estimate of his speed as he was passing the other car. There was no denial by Hutchinson or Benson of Addison's statement that Hutchinson told him that they passed the Chevrolet because they thought it would be fun, and there was no testimony, except the statement aforesaid of Benson, to the effect that they did not speed up to pass the Chevrolet just for the fun of passing it.

We do not think that the evidence in this case warrants the finding that Benson had the specific intent in his mind to strike or collide with the other car at the time he was passing it with his Ford coupe, but the evidence does warrant the finding of the judge who tried the case that he was guilty of reckless driving and speeding while attempting to pass the car which was shown to be traveling about twenty-five or thirty miles an hour at the time it was struck, and that his conduct on this occasion was shown, beyond a reasonable doubt, to be so reckless, wanton and willful as

to show an utter disregard for the safety of the persons
in the Chevrolet car. Under the previous holdings of this
court such a finding is sufficient to convict the defendant
of an assault with a deadly weapon, as charged in the
indictment in question. (*People* v. *Anderson,* 310 Ill.
389.) There has been considerable argument by the plain-
tiff in error to the effect that there could be no finding of
the defendant to be guilty as charged, because the evidence
shows that the car in question turned over on the pavement
on its left side and then with its bottom up, and that this
fact shows that it was through no collision of the two cars,
as in such case it would have turned over to the right and
into the ditch. The evidence is not positive as to the fact
that the car did turn over to the left, but the evidence
does tend to show that such was the fact. Notwithstand-
ing this fact, if it be a fact, we do not think that the con-
clusion is sound that the car would necessarily turn to the
right when hit on the left front by the Ford. The evidence
shows that the Chevrolet was going at considerable speed
itself and in the act of turning to the right as the Ford
passed it, and a striking of the front end of the car by the
Ford would naturally tend to drive the front end of the
Chevrolet further to the right, and the forward speed and
momentum of that car would naturally tend to turn the
car over to the left, as the car was no doubt in a position
angling across the road to the right after being struck by
the other car. We do not think there can be any reason-
able doubt of the fact that there was an actual collision be-
tween the two cars. The whole conduct of the defendants
just after the collision, when they tried to conceal their iden-
tity and their residence, shows that it was then their belief
that they were the cause of the collision and that their con-
duct was censurable and culpable. While it is the duty of
the courts to guard the rights of every defendant charged
with crime and to give him the full benefit of the reason-
able doubt of his guilt when tried for crime, yet it is equally

the duty of the courts to protect the traveling public against reckless, wanton and willful and unlawful conduct of the drivers of automobiles over the public roads of our State.

We do not think that we would be warranted in setting aside the judgment of both the trial and the Appellate Court in this case on a mere question of fact. The defendant has had a fair and impartial trial, and the judgment should be, and is, affirmed.

*Judgment affirmed.*