## ELMER BROCK v. STATE.

No. A-6145.  Opinion Filed Feb. 11, 1928.
(263 Pac. 1115.)

Chester H. Lowry, Brown Moore, and R. J. Shive, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of

Noble county of manslaughter in the second degree, and his punishment fixed at confinement in the state penitentiary for a term of two years.

A brief summary of the voluminous record discloses the following facts: On December 6, 1924, defendant, in company with one Madison, one Emerson, and two women, left the town of Perry in a Nash automobile belonging to Madison, and drove south some 10 or 12 miles into Payne county. They stopped for some time at a farmhouse, and then returned toward Perry on the main highway. Defendant, Madison, and one of the women, Helen Rooney, occupied the front seat. Emerson and the other woman, Mrs. Ragsdale, occupied the back seat. On this afternoon Mrs. Grace Hetherington and her son, about five years of age, and Mrs. Will Thompson, left the city of Perry about 4 o'clock, and started southward to their home; Mrs. Hetherington driving a Ford car about a mile and a half south of Perry the car in which they were driving was struck by the car in which were Brock and the other parties. The collision completely wrecked the Ford car, and so injured Mrs. Hetherington that she died in a few moments. Mrs. Thompson was seriously injured. At the time of the collision the Nash car was going at a high speed, estimated at 45 or 50 miles per hour. After it hit the Ford car, it left the roadway, went through two wire fences, breaking several posts in each and stopped 126 feet from the point of collision. Neither the Nash car nor any of its occupants appear to have been greatly injured. The windshield was broken at the right side, and Madison was cut on the face. After the collision, the Nash car was driven into Perry by defendant, and he, with the Rooney woman, then drove to Pawnee, where he was arrested.

There is evidence that before starting on the trip

Madison had a bottle of whisky, which was passed. Defendant testifies he only tasted it. Just after the collision a two-gallon jug of corn whisky with considerable blood on the handle, was found in the grass near the Nash car. There was considerable evidence that defendant was intoxicated at the time of the collision. Emerson was so intoxicated that he could not be aroused, and testified that he knew nothing about the wreck, and did not reach a state of consciousness until some time later at the town of Perry. Different witnesses testify that a few miles south of the scene of the collision defendant was driving the Nash car with the Rooney woman in the middle of the front seat, and Madison on the right side. Defendant testified he was not driving the car at the time of the collision, but that it was driven by Madison. None of the other members of the party testified, except Emerson, who says he was in a state of unconsciousness at the time of the collision. Immediately after his arrest at Pawnee, defendant called up certain officers at Perry, who testified he stated:

"I don't know how they can do anything with me; it wasn't my car. I was just driving it."

The first contention is that the information is duplicitous, uncertain, and insufficient. The information is in three counts. The first alleges, in substance, that Elmer Brock and William C. Madison, while engaged in the commission of a felony, the driving of a automobile upon the public highway while under the influence of intoxicating liquor without any design to effect death, and with a deadly and dangerous weapon, to wit, a Nash automobile, did drive said automobile against and upon one Grace Hetherington and did inflict mortal wounds from which said Grace Hetherington did then and there die.

The second count alleges, in substance, that de-

fendant and William C. Madison, while engaged in the commission of a felony, to wit, driving an automobile upon the public highway while under the influence of intoxicating liquor, and in a manner eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any particular person, with a dangerous and deadly weapon, a Nash automobile, driven at an unlawful and excessive rate of speed, greater than was reasonable under existing circumstances, without due regard to traffic, the safety of pedestrians, and the drivers of other vehicles, and at such rate of speed as to endanger the life and limb of others upon the highway, did drive said Nash automobile against and upon said Grace Hetherington, and did thereby inflict mortal wounds from which the said Grace Hetherington did then and there die.

The third count charges the defendant and William C. Madison with murder by the use of a certain dangerous and deadly weapon, a Nash automobile, containing the other allegations necessary in a charge of murder.

This information was attacked by a demurrer and by an objection to the introduction of evidence; each going to the sufficiency of the information, and raising fully the question of duplicity.

Certainly, if the information in this case charges more than one offense, regardless of the guilt of defendant, the conviction cannot be sustained. Berry v. State, 17 Okla. Cr. 186, 187 P. 248; Roberts v. State, 27 Okla. Cr. 97, 225 P. 553; Berg v. State, 29 Okla. Cr. 112, 233 P. 497; Wear v. State, 30 Okla. Cr. 118, 235 P. 271; Sturgis v. State, 32 Okla. Cr. 252, 240 P. 750; Cole v. State, 38 Okla. Cr. 396, 262 P. 712.

Under the provisions of our Criminal Code, an indictment or information must contain a statement of the

acts constituting the offense in ordinary and concise language in such manner as to enable a person of common understanding to know what is intended, and must be direct and certain as regards the offense charged. Only one offense may be charged in an indictment or information, but, where the same act may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty, the different offenses may be set forth in separate counts in the same indictment or information, and the accused may be convicted of either offense. The same offense may be set forth in different forms or degrees under different counts. Sections 2555, 2556, 2558, Comp. St. 1921. Here evidently but one act, a single offense, is in the mind of the pleader, that of causing the death of Grace Hetherington by wrongfully and feloniously driving against and upon her a Nash automobile. In the first count the information alleges a state of facts and the commission of an act which constitute murder under the third subdivision of section 1733, Comp. St. 1921. In the second count the information alleges a state of facts and the commission of an act which constitute murder under the second subdivision of said section 1733. In the third count the information alleges murder in the usual form as murder is defined in the first subdivision of said section 1733. The county attorney, out of excessive precaution, has alleged the act to have been committed under each subdivision of said section. The information is more definite than is required under our Criminal Code. In the case of Turner et al. v. State, 8 Okla. Cr. 11, 126 P. 452, it was said:

"An indictment for murder which charges that the homicide was unlawfully committed with a premeditated design to effect the death of the deceased, includes every character and degree of unlawful homicide, and a conviction, if warranted by the testimony, will be sustained under such an indictment for murder, manslaughter,

assault with intent to murder, aggravated assault, or simple assault. * * * In its last analysis murder in Oklahoma consists in the unlawful killing of a human being with a premeditated design to effect his death, or the death of some other person. This premeditated design to effect death must be established either by direct evidence as a matter of fact, or it arises as a conclusive presumption of law in the class of cases mentioned in paragraphs 2 and 3 of section 2268, Comp. Laws 1909 [section 1733, Comp. St. 1921.] These paragraphs do not state a rule of pleading to be followed in an indictment, but they establish a rule of evidence for the trial judge in the admission of testimony and in his instructions to the jury. * * *

"All defects or imperfections in the matter of form of an indictment or information which do not tend to prejudice the substantial rights of a defendant upon the merits are immaterial, and do not affect the validity of such indictment or information."

In the case of Carle v. State, 34 Okla. Cr. 24, 244 P. 833, the rule announced in the Turner Case was reiterated, the court saying:

"Where an information charges murder under the first subdivision of section 1733, Comp. St. 1921, in perpetrating a homcide without authority of law, and with a premeditated design to effect the death of the person killed, a conviction, if warranted by the evidence, may be had under either of the other subdivisions of said statute."

The information is objectionable in this, that there is no allegation that the offense charged in the second count and in the third count is the same transaction and act charged in the first count. This allegation should have been made. In the case of Wear v. State, supra, this court said:

"Where an information contains two or more counts which are based on the same transaction, it is necessary to allege such fact. But, where an offense is sought to

be charged in the different counts which are not in fact based on the same act or transaction, the allegation that they are based on the same act will not suffice. While in this case the second count alleges that the offense ought to be charged therein is a different statement of the offense stated in the first count, an examination of the offense sought to be charged in the two counts conclusively shows that they are not the same, and the allegation is not sufficient to satisfy the statute. Bonitzer v. State, 4 Okla. Cr. 354, 111 P. 980."

As was there said, the allegation is not absolutely determinative. The including of such allegation does not conclude the matter. The transaction, acts, or omissions charged in the different counts must in fact be the same, and, if they are in fact the same, failure to so allege in express terms, where it otherwise appears from the information that they are in fact the same, is not a fatal defect. In this case, the information as a whole discloses that the three counts refer to one and the same transaction, act, and omission, and attempts to plead but one offense.

It is next contended that the evidence is insufficient, and that the court admitted incompetent evidence prejudicial to defendant. We think it is unnecessary to review the facts further to support our view that the evidence is sufficient to sustain the judgment. The facts proven and the inferences logically arising from them abundantly support the verdict and judgment. In the course of the trial the state introduced evidence that a two-gallon jug of whisky was found near the Nash car immediately after the accident. The witness Foster, a deputy sheriff, testified that immediately after the collision, and while other persons attracted there by the collision were still on the ground, he followed the tracks of the Nash car from where it struck the Ford car, and said:

"* * * As I went over the last place, the rough

place the car went over down into the road, I saw a man down below the car in the grass with a jug in his hand. I went down immediately to the jug, and it was covered with finger marks and splotches of blood in a dozen places, at least, on the jug, and I took possession of the jug, and on the handle where it had been carried it was very bloody. I got my hand very bloody carrying the jug by the handle on the jug. Now I can't name the man who picked that jug up. * * * The next morning, pretty early in the morning, I believe the county attorney went out with me, and we traced the blood tracks from where the car had stopped down through the grass to right very near, at least to where the jug was found. * * *"

This evidence, we think, was competent as a circumstance corroborating the testimony of various witnesses that defendant was intoxicated. It is also argued under this assignment that the court erred in permitting witnesses to testify whose names were not indorsed on the information. None of these witnesses were witnesses in chief, and it was not necessary that their names be indorsed.

Complaint is also made that the court erred in his instructions Nos. 10, 12, and 15, and in refusing various requested instructions. Instruction No. 10 informs the jury, in substance, that a deadly weapon is an instrument with which death can be easily and readily produced, whether the instrument be for the purpose of destroying animal life or made for some other purpose. This is not a particularly apt definition, but we fail to see how it is prejudicial to defendant. In the recent case of People v. Benson, 321 Ill. 605, 152 N. E. 514, 46 A. L. R. 1056, it is said:

"One attempting to pass an overtaken automobile in a highway under conditions rendering his conduct so reckless and wanton as to show an utter disregard of the safety of the persons in the overtaken car may, if he

strikes such car and causes injury to its occupants, be found guilty of an assault with a deadly weapon."

Authorities in support of the ruling are cited in the notes. See, also, notes, 42 A. L. R. 1120; 41 A. L. R. 725.

The court's instruction No. 12 is a definition of culpable negligence and is substantially the language used by this court in the case of Nail v. State, 33 Okla. Cr. 100, 242 P. 270.

Instruction No. 15 tells the jury the manner in which an automobile should be operated upon the public highway, and the duty owing by a driver of an automobile to others on the highway. The particular part of the instruction complained of is that it embodies a portion of section 2, c. 16, of the Session Laws 1923, held void for uncertainty in the case of Missel v. State, 33 Okla. Cr. 376, 244 P. 462. That part of the instruction is not applicable to the facts proven, as the accident did not take place at an intersection. The remainder of the instruction correctly states the duty owing by one operating an automobile on the public highway to the public generally. The including in this instruction of the invalid portion of section 2, c. 16, Session Laws 1923, could not have misled the jury, and presents no reason for a reversal.

The various requested instructions, so far as proper and applicable, are substantially covered by the court's general charge. The instructions as a whole, considered all together in connection with the evidence in the case, fairly and correctly state the law applicable. They contain no fundamental error nor misstatement of law calculated to mislead the jury.

Several other assignments of error are briefly presented, but none of them are of sufficient importance

to require special discussion. It is a matter of common knowledge that the operating of automobiles upon the highway by persons under the influence of intoxicants is all too prevalent. It is almost a daily occurrence for an automobile collision to occur, or for an automobile to injure some pedestrian at some point in the state. In many of these cases undoubtedly the injury is caused by speeding, criminal negligence, recklessness, or other violation of highway or traffic regulations by an intoxicated driver. Where no error substantially prejudicial is made to appear, persons convicted for this class of offense must be made to suffer the consequences.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.