ARCHIE LAMB v. STATE.

No. A-9677. Sept. 18, 1940.
(105 P. 2d 799.)

Springer & Springer, of Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Archie Lamb, was charged in the district court of Payne county with the offense of assault with intent to kill, a second or subsequent offense, was tried, convicted, and sentenced to serve ten years in the state penitentiary, and has appealed.

The information against the defendant reads as follows:

"Leon J. York, County Attorney of Payne County, State of Oklahoma, under and by virtue of the authority vested in him as County Attorney, gives this honorable court to know and be informed in the name and by the authority of the State of Oklahoma, at the July, A. D. 1938 term of said court that at and in the county of Payne and State of Oklahoma, on the 8th day of October, 1938, one Archie Lamb, then and there being, did then and there willfully, unlawfully, feloniously and knowingly having been convicted of two (2) prior offenses punishable by imprisonment in the State Penitentiary, commit the crime of 'Assault with intent to kill' in the following form and manner, to wit:

"That on the 17th day of March, 1937, one Archie Lamb, prior to the filing of the information in this case, was informed against by information in the District Court of Payne County, Oklahoma, a court of competent jurisdiction, and said information being filed in said District Court by Leon J. York, County Attorney of Payne County, Oklahoma, on the 29th day of April, 1937, charging the said Archie Lamb with the crime of 'Operating a motor vehicle while under the influence of intoxicating liquor,' contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma; said Archie Lamb was brought before the bar of the said District Court on the 18th day of May, 1937, the same being one of the regular judicial days of the January A. D. 1937 term of said court, he having been previously duly arraigned thereon, entered his plea of 'not guilty' to the crime as charged in said information. The case was thereupon duly tried by a jury, who brought in a verdict of 'guilty' to the crime as charged; his punish-

ment was assessed at imprisonment in the state penitentiary at McAlester, Oklahoma, for a period of one (1) year, said defendant was thereupon sentenced by the court on the 25th day of May, 1937, and said defendant was delivered to the warden of the State Penitentiary at McAlester, and said sentence was served by him.

"Thereafter, on the 22nd day of May, 1937, while the said defendant was free on bond, pending a sentence to the crime aforesaid, he was informed against in the District Court in and for Payne County, Oklahoma, a court of competent jurisdiction, by Leon J. York, County Attorney of Payne County, Oklahoma, charging the said Archie Lamb with the crime of 'Operating a motor vehicle while under the influence of intoxicating liquor,' contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma; thereafter, on the 25th day of May, 1937, the said Archie Lamb was brought before the bar of the District Court of Payne County, Oklahoma, and having been arraigned and charged, with the crime of 'Operating a Motor Vehicle while under the influence of intoxicating liquor,' he entered his plea of 'guilty' to the crime as charged in the information, and upon consideration thereof, it was decreed by the court that he be committed to and imprisoned in the state penitentiary at McAlester, Oklahoma, and confined in said penitentiary for a term of one (1) year; that the said Archie Lamb was delivered to the warden of said penitentiary and served the said sentence in accordance with the judgment of the District Court of Payne County, Oklahoma.

"That after aforesaid judgments and sentences, and prior to the filing of this information, on the 8th day of October, 1938, the said Archie Lamb did then and there violate the laws of the State of Oklahoma for a third and subsequent time, having been previously convicted of two (2) offenses punishable by imprisonment in the state penitentiary, as aforesaid, and while the said Archie Lamb was under the influence of intoxicating liquor, and while driving at a high rate of speed, and in a reckless manner, a certain automobile upon state highway No. 40, at a point

about two (2) miles south of the City of Stillwater, Payne County, Oklahoma, and in a grossly and criminally negligent manner, without due regard to the traffic and use of the highway, and the safety of others, and with reckless disregard of his own safety and willful indifference to the consequences liable to follow, did drive, operate, and propel said automobile in the night time on said highway at a speed in excess of that allowed by law, and while thus driving said automobile, and while under the influence of intoxicating liquor as aforesaid, he did then and there unlawfully, willfully, wrongfully, intentionally, and feloniously make an assault and battery in and upon one Geraldine Gibson, by running and driving with great force and violence his said automobile into and against an automobile in which the said Geraldine Gibson was a passenger, thereby inflicting serious injuries upon the body and face and head of her, the said Geraldine Gibson, and with such force as was likely to produce the death of her the said Geraldine Gibson, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

The proof on behalf of the state in substance is as follows:

That on Saturday night, October 8, 1938, about 9 p. m., one George Gibson, his wife, and two children were driving along Highway No. 40 in a southerly direction; that when they arrived at a point close to a beer tavern known as Brownie's Place, they were struck in the rear by another automobile. The impact of the collision knocked the Gibson automobile about 100 feet and off the pavement on the west side. All of the Gibson family were considerably shaken and bruised by the collision; and the daughter, Geraldine, sustained severe injuries to her head.

The car which struck the Gibson car was being driven by the defendant, who also suffered a cut on the head and the loss of two teeth. The defendant was taken home by two men whose names were not brought out in the testi-

mony, at which place he was arrested a few minutes later by two highway patrolmen. A doctor who was present at the beer tavern where the collision occurred and who examined the defendant there, together with the two highway patrolmen, the members of the sheriff's force who saw the defendant immediately after his arrest, and the family doctor of the defendant, who treated the defendant for his injuries after he was taken to the jail, all testified that the defendant was very drunk.

The proof further showed that prior to that time the defendant had been convicted twice of the offense of driving an automobile while under the influence of intoxicating liquor and was sentenced to serve a term of one year on each charge. It was further brought out in the examination of the defendant that he had been twice convicted of the offense of possession of intoxicating liquor and had pleaded guilty to being drunk in a public place on seven or eight different occasions.

In his own defense, the defendant testified that he had remained at his home, which is just a short way from where the wreck occurred on that day, with his wife who was sick; that at supper time he had gone to the beer tavern and bought four bottles of beer and some cheese sandwiches, which he and his brother-in-law had for their supper. That shortly after dark his wife suggested that he drive to where her folks live, south of Perkins, to get one of the relatives of the defendant's wife to come and stay with her while the defendant was at work. That he was driving down the highway in a reasonable manner behind the Gibson car when a car started to back from the position where it had been parked near the beer tavern, which caused the Gibson car to swerve to the left just as the defendant started past it, causing the defendant's automobile to crash into the Gibson car. That the de-

fendant was not drunk, but was addled by the blow that he received in the wreck, which caused him to talk incoherently and to stagger when he walked.

The defendant makes three assignments of error, to wit:

(1) Error of the court in refusing to sustain the demurrer to the information.

(2) Error of the court in giving instruction No. 13.

(3) Error of the court in giving instruction No. 10.

As to the first assignment, the defendant contends that the information is defective in that it charges an assault upon Geraldine Gibson by striking the car in which she was riding, but no causal connection is shown by the striking of the automobile in which she was riding and any injury which she may have sustained. This assignment appears to us to be wholly without merit. Surely it is not necessary that an information set forth that particular part of the automobile which was struck by the injured person, whether it is the windshield, the gear shift, the steering wheel, or any of the many modern devices which are on the average automobile. The information sufficiently advises the defendant of the nature of the charge against him so that he may prepare his defense thereto. It alleges every element of the offense intended to be charged and identifies the offense with such particularity that he would be able to defend himself against any subsequent prosecution for the same offense.

Instruction No. 13 reads as follows:

"Therefore, if you find and believe from the evidence in this case beyond a reasonable doubt that at and within the county of Payne and State of Oklahoma, on the 8th day of October, 1938, that the defendant, Archie Lamb,

then and there being did then and there, willfully, unlawfully, wrongfully and feloniously, while driving in a reckless manner, an automobile upon State Highway No. 40, at a point about two miles south of Stillwater, in Payne county, Okla., in a grossly and criminally negligent manner, without regard to the traffic and use of the highway, and safety of others, and with willful indifference to the consequences liable to follow, did drive, operate and propel said automobile upon and against one Geraldine Gibson, and then and there and thereby wrongfully and feloniously make an assault and battery upon her by driving his said automobile with great force and violence into and against the automobile in which she was riding and then and thereby inflict serious injuries upon her body with such force as was likely to produce the death of her, the said Geraldine Gibson, and you further find and believe from the evidence in the case, beyond a reasonable doubt, that said Archie Lamb had, prior thereto, been duly convicted of one or more offenses against the statutes of the State of Oklahoma, punishable by imprisonment in the state pentitentiary, as alleged in the information in this case, then, and in that event you will find the defendant, Archie Lamb, guilty of the crime of assault and battery with intent to kill, second or subsequent offense, and fix his punishment in your verdict at imprisonment in the state penitentiary for a term of not less than ten years, and so say by your verdict."

Instruction No. 10 reads as follows:

"You are instructed that the crime charged in the information in this case is assault and battery with intent to kill and the included lesser offenses of assault with intent to do bodily harm. In this connection you are told that in any case where the element of an offense is the question of intent with which an act is alleged to have been done, that the law presumes that every sane person intends the natural, ordinary and probable consequences of his own voluntary acts unless the contrary appear from the evidence. If a defendant is shown by the evidence beyond a reasonable doubt to have operated and driven a motor vehicle upon the public highways at a rate of speed

that is greater than is reasonable under the existing circumstances, having due regard to the traffic, the use of the highway and the safety of others, or operates the same in such a manner as to endanger the lives and persons of others, then he is guilty of culpable or criminal negligence, and if such negligence is the proximate cause of injury to another, in such case such criminal or culpable negligence takes the place and supplies such unlawful intent."

The defendant makes the assertion that instruction No. 13 is erroneous, but does not point out any particular in which it is erroneous; and no citation of authority is given to support his conclusion. This instruction is very well prepared and correctly states the law. Of course, this instruction must be read in connection with all of the other instructions, and when this instruction, together with the other instructions, are considered as a whole and fairly and correctly state the law, they are sufficient.

It is insisted that instruction No. 10 is erroneous because an evil intent is a necessary element of the offense with which the defendant is charged, and that the court erred in instructing the jury as shown in instruction No. 10 that the law presumes that every sane person intends the natural, ordinary, and probable consequences of his own voluntary acts unless the contrary appears from the evidence.

In the case of Winkler v. State, 45 Okla. Cr. 322, 283 P. 591, 592, we held:

"An automobile, when propelled against a person, is a dangerous weapon. If a person operating an automobile upon the highway does so in a reckless manner, endangering the safety of pedestrians or others, and while so operating the vehicle in such manner he drives it against some person, causing death, he is guilty of a crime. Nail v. State, 33 Okla. Cr. 100, 242 P. 270. Mayse v. State, 38 Okla. Cr. 144, 259 P. 277. Brock v. State, 39 Okla. Cr. 162, 263 P. 1115. Logan v. State, 42 Okla. Cr. 1, 274 P. 39.

If, while so operating an automobile in violation of law a person should injure a pedestrian or other person without causing death, and such unlawful act is the proximate cause of the injury, he is likewise guilty of a crime. If defendant is guilty of culpable negligence in passing the school truck, as it was discharging its passengers, at a dangerous speed, or without coming to a stop or having his car under control, and thus avoid injury to the school pupils, he is guilty of a crime. In such case the commission of a misdemeanor in operating an automobile in the manner forbidden by section 2, c. 16, Session Laws 1923, takes the place of and supplies the unlawful intent. 1 Bishop's Crim. Law (8th Ed.) § 313 et seq. It then becomes a question of fact whether or not defendant at the time was guilty of culpable negligence in operating an automobile upon the highway in violation of the law."

In Nail v. State, 33 Okla. Cr. 100, 242 P. 270, this court held:

" 'Culpable negligence' is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case.

"The same negligence, as it affects the individual and the state, is, respectively, 'gross negligence' and 'criminal' or 'culpable negligence.' Between criminal or culpable negligence and negligence merely there is no principle of discrimination. It differs only in degree."

In the Winkler Case, supra, we held that the operation of an automobile upon the highway at a rate of speed greater than is reasonable under the existing circumstances, having due regard to the traffic, the use of the highway, and the safety of pedestrians, was a misdemeanor under section 2, chapter 16, Session Laws of 1923, 47 Okla. St. Ann. § 92, and that the person operating the vehicle in that case was guilty of culpable negligence.

When this instruction is read in the light of the decision in that case, it appears to be in proper form. The

statement in the instruction that in any case where an element of the offense is the question of intent with which an act is alleged to have been done, the law presumes that every sane person intends the natural, ordinary and probable consequences of his own voluntary acts unless the contrary appears from the evidence is not literally true; but in this character of case, where the state is relying for a conviction upon the fact that the defendant was committing an offense in the operation of his automobile, such statement in instruction No. 10, when read in connection with the balance of said instruction, together with the other instructions which were given, is not improper.

The defendant makes the further contention that the verdict of the jury is excessive and also that it was rendered by reason of passion or prejudice. The facts do not support this contention. The defendant appears to be a persistent violator of the law. His right to drive an automobile should be permanently forfeited by reason of his misconduct. Under the facts herein it appears very fortunate that neither the defendant nor the occupants of the Gibson car were killed. The punishment is severe, but is fully merited by the proof.

The judgment of the district court of Payne county is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.