## HAMMONS v. STATE.

No. A-11747.  March 4, 1953.

(254 P. 2d 793.)

Hatcher & Bond, Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error Herchel Hammons, defendant below, was charged with the crime of knowingly receiving stolen property, Title 21, § 1713, O. S. A. 1941, to wit, one roan calf about 6 days old, the property of Mrs. H. B. Arterberry. The information alleged the crime to have been committed in Grady county, Oklahoma, on or about April 14, 1951, on the defendant's farm near Pocasset, Oklahoma. The defendant was tried by a jury, convicted, his punishment fixed by the trial judge at 1 year and 1 day in the penitentiary and judgment and sentence entered accordingly, from which this appeal has been perfected.

The record made at the trial is composed of 374 pages, but briefly the facts as established by the state are as hereinafter follows: It appears Herchel Hammons, 32 years of age, was a farmer residing on a farm in the vicinity of Pocasset, Oklahoma. The defendant was the owner of a green 1950 Hudson automobile and a Dodge pick-up truck. The state established that the defendant together with L. B. Mitchell, 26 years of age, Mitchell's young brother, Fermon, 17 years of age, and a woman, 26 years old, Oleta Osborn, friend of the oldest Mitchell brother, would drive around over the country and locate young calves. Then either in the Hudson or the Dodge pick-up after night, the Mitchell boys and the Osborn woman would steal the calves that had theretofore been located. It seems the defendant agreed to pay the older Mitchell $25 for each calf he stole. The assistance rendered by his young brother and the girl was compensated by payment of expenses, food and spending money. The nefarious transaction up to the theft of Mrs. Arterberry's calf netted them about $150. It seems that Claude Mitchell, the father of L. B. and Fermon, became suspicious of the quantity of money the boys had without apparent legitimate employment. Upon inquiry of Fermon he told his father what they were doing. No sooner did the father, Claude Mitchell, learn the facts than he prompted the arrest of all four of the parties to the contemptible scheme. The boys and the girl were charged with having stolen the property. In connection with this specific charge against Hammons, the Mitchell boys and Oleta Osborn testified for the state, and related how on the night in question they were informed of the roan calf being in Mrs. Arterberry's lot, and by arrangement with the defendant they delivered his Hudson to him at Pocasset, picked up the Dodge truck, and got $5 on account. The defendant was in attendance at a dance that night, likewise attended by Mrs. Arterberry. While she and the defendant were both at the dance the Mitchell boys and Oleta Osborn stole the Arterberry calf, delivered it to the Hammons lot, through a broken board in the fence a short distance from the road. They related that other calves had been stolen and delivered in this manner for the defendant, including one that belonged to Walter Noakes. The record discloses that there were 14 or 15 such young calves in the defendant's lot, the major portion of which were later picked up by the sheriff's force and apparently redelivered to their owners. The defendants were released from jail on Tuesday, April 17th, on which night the defendant Hammons and his brother came to the Mitchell home for the dual purpose of paying the

balance of $20 for the Arterberry calf, and to persuade the Mitchell boys to take the rap by saying they stole the calves and sold them to a man called Nig from whom the defendant contended at time of trial he bought the calves. The father, Claude Mitchell, ordered Hammons to leave.

The defendant stood on the story that he bought the Arterberry calves and 8 others from a man by the name of "Nig" whose identity no one, not even the sheriff, could establish, after driving over the country 1,000 miles, in an effort so to do. Nevertheless, some persons testified to seeing a man meeting the description of the tall, slender, dark-complexioned, wide-foreheaded man with the beat-up black Ford truck, with calves to sell. Such witnesses often are altogether too easily found. Only recently this court had a similar experience with such character of testimony in another case. In any event the jury could hardly believe his story in face of the forthright testimony of the thieves themselves, from whom he received the Arterberry calf and with whom he planned the theft and conspired to receive it after it was stolen. The evidence of guilt was entirely sufficient to sustain the jury's verdict. The defendant does not question its sufficiency.

He urges two propositions, first, that the trial court erred in giving instruction No. 10, and in refusing to give his requested instructions Nos. 3, 11, 12 and 13, in that the court did not properly instruct the jury upon the burden of proof required as to guilty knowledge or actual belief on the part of the defendant that the property was stolen at the time the defendant received it. He complains of the trial court's instruction No. 10, the gist of which is, in substance, as follows, to wit: that at the time he received the calf in question he "then and there well knew * * * or had grounds to believe from all the facts and circumstances that the same had been stolen". He contends that the trial court erred in not going further and adding the phrase, "and did believe that the property had been stolen". In considering the defendant's requested instructions it is not necessary that they be set forth in full. A study of the requested instructions reveals they are all in relation to guilty knowledge on the part of the defendant. In requested instruction No. 3 the pertinent portion thereof relates to the proposition, "that the defendant knew or had reason to believe and did believe that the calf was stolen". Requested instruction No. 11 is in effect, "that he did receive it, had knowledge at the time that the calf was received that it was stolen". Requested instruction No. 12 is in effect that the state must prove, "that the defendant received the roan calf and at the time he received the same had knowledge it had been stolen." The gist of instruction No. 13 is that at the time defendant Herchel Hammons received the calf, and that at the time of receiving the calf he had knowledge that it had been stolen". Hence it is apparent that the gist of the defendant's requested instructions are substantially the same in effect. It is conceded by the state, that the trial court's instruction No. 10, standing alone, may have been ambiguous. However, it has been repeatedly held that instructions must be considered as a whole and when so considered, if they correctly state the law applicable to the case, they will be sufficient. Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 799; Cawley v. State, 96 Okla. Cr. 53, 248 P. 2d 273, (a cattle stealing case). An examination of the instructions in this light discloses that instruction No. 4 given by the trial court reads as follows:

"You are further instructed, Gentlemen of the Jury, that the statutes of Oklahoma provide:

" 'Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding two hundred and fifty dollars, or by both such fine and imprisonment.' "

This instruction properly informed the jury upon what basis they could predicate a finding of the defendant's guilt, i. e., that the defendant must have received the property knowing the same to have been stolen. Title 21 § 1713, O. S. A. 1941 and 1951.

In Lewis v. State, 81 Okla. Cr. 168, 162 P. 2d 201, cited by defendant, this court said:

"Under the well-defined principles of law, as outlined by the many decisions of this court, it is necessary in a case of this character, not only for the state to show that the goods have been stolen, but it is necessary to show that the party receiving the property had knowledge at the time the property was received that it had been stolen. By this expression it is not meant that it is not necessary for the person receiving the same to have actually seen the theft of the property. It is sufficient if the facts are such as to cause an actual belief that the property was stolen. Price v. State, 9 Okla. Cr. 359, 131 P. 1102; 2 Bishop's New Criminal Law, section 1138.'"

A further examination of the trial court's instructions discloses that instruction No. 9 not only laid down the law as to knowledge, but went much further in favor of the defendant than the law required the trial court to go. It erroneously instructed the jury that the state must establish the fact of criminal intent with hope of gain or personal profit on the part of the defendant in receiving the stolen property, which the trial court said must concur with receiving of the same. We know of no authority which establishes such matters as elements of the offense of receiving stolen property. To so instruct was clearly erroneous, but it was error favorable to the defendant. In fact, instruction No. 9 was not only more favorable to the defendant than he was entitled to under the law, but was even far more favorable to him than the defendant's requested instructions. Instruction No. 13, given by the trial court, required the jury to look to the instructions as a whole for the law of the case, not singling out any part or paragraph of any instruction upon which to base their deliberations for a verdict. We are of the opinion when so considered the instructions given were most favorable to the defendant.

The second proposition urged by the defendant is that the trial erred in refusing to permit the accomplice Fermon Mitchell to answer the following question asked by defense counsel, to wit: "Q. You went out and confessed to cattle stealing in Kiowa County, Oklahoma?" The record shows the inquiry was objected to and the objection sustained. The defendant contends that such matter went to the witness' credibility and was proper cross-examination, since any matter which would have a tendency to lessen the credibility of a witness, show bias, or prejudice, friendship or emnity to either party to the lawsuit, or a circumstance where he would be tempted to swear falsely, is proper matter of inquiry upon cross-examination. Henry v. State, 6 Okla. Cr. 430, 119 P. 278; Blumhoff v. State, 72 Okla. Cr. 339, 116 P. 2d 212. The rule announced in the last two cases is not applicable to the point in question. We are of the opinion the court's refusal to permit the cross-examination on this point was proper, since no connection whatever is shown between this alleged offense and the offense on which the defendant was being tried. It is elementary that a witness cannot be impeached on collateral matters. Pressley v. State, 71 Okla. Cr. 436, 112 P. 2d 809, 815. Therein it was also said:

"It is improper to ask a witness if he has ever been indicted, arrested or imprisoned, before conviction, for any offense whatever."

The matter of having confessed to another unrelated crime not connected with the one on trial is clearly not a matter of proper inquiry on cross-examination. On the matter of other criminal offenses, a witness can only be asked for the purpose of affecting his credibility, if he has ever been convicted of a crime.

Corliss v. State, 12 Okla. Cr. 526, 159 P. 1015. The statute permits a showing of conviction of crime as affecting the credibility of a witness. Title 12, § 381, O. S. A. 1941; Howard v. State, 67 Okla. Cr. 445, 94 P. 2d 947; Forester v. State, 36 Okla. Cr. 111, 252 P. 861. For all the above and foregoing reasons, the judgment and sentence is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.