# RAY HILL v. STATE.

No. A-6549. Opinion Filed April 20, 1929.
Rehearing Denied June 1, 1929.
(277 Pac. 595.)

Ray & Thomas, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was jointly charged with Herman Morgan by information in the district court of Comanche county with willfully, unlawfully, feloniously, intentionally, and wrongfully committing an assault and battery upon R. W. Plummer, by then and there striking the said Plummer upon the head with a dangerous weapon, to wit, a billy; and kicking the said Plummer upon the head and body with such force as would likely produce the death of the said Plummer. A separate trial was had, and the jury returned a verdict finding the defendant Ray Hill guilty of assault with a dangerous weapon with intent to do bodily harm, and left the punishment to be fixed by the court. The court sentenced the defendant to two years' imprisonment at hard labor in the penitentiary at McAlester. Motion for new trial

was filed, considered, overruled, and defendant appealed to this court.

The testimony in this case in substance is that R. W. Plummer was a policeman in the city of Lawton, on the 31st day of July, 1926, and defendant Ray Hill, in company with Herman Morgan, was on the street, and passed Plummer in front of the O. K. Transfer office. Herman Morgan called to Mr. Plummer and wanted to see him. Hill, the defendant in this case, was standing on the curb. Witness Plummer says he walked over there, and Morgan told him that Hill could whip him, and used vulgar words. Witness said he told Morgan that he would have to stop using such language, and that he told them they would have to go to the police station and settle the argument. At that time defendant said, "Keep your hands off of me," and stepped around the witness, and that "Morgan struck me. Defendant went around and tried to get his arm around me and Morgan continued to hit me; I caught around Hill's arm and neck and proceeded to work on him; I knew I could handle him and supposed the crowd would take care of Morgan; I went to the ground with Hill, and Morgan went wild and stamped me in the back and neck; I kept Hill down until the latter part of the fight; Hill did not do anything until the fight was about over; I did not need the club and I threw it out to one side, it had a strap on it and about half the time it was holding my hands; when I threw the club down I had Hill around the neck, we was down; I was on top of Hill; Morgan continued to stamp on my back and neck; he kicked me once on the jaw and back, it was a stamp; I don't have any idea how many times he stamped; I heard him remark to get a club and kill him, he was saying something I could not remember, I was groggy, I got hit on the head several licks, and once right over (indicating), I was struck four or five times on the head; hit me heavy licks; at the time he struck me I was down

and he was up. The sheriff came and stopped the fight. The club was about twenty-two or twenty-four inches, it was a rosewood club I was carrying."

On cross-examination witness Plummer stated Morgan made the first motion to strike him, when Hill grabbed him, Morgan was slugging him. "Morgan was behind and on one side of me; Hill was on the other side of me; Hill ran behind me and I reached around and got him by the neck; Hill did not straighten me out that time, had only grabbed me; he grabbed me around the waist; I grabbed him around the neck; I had the club on my arm at the time; Hill and I went to the ground together and Morgan kept stamping me on the back and neck, and I went to work on him; Hill commenced hitting me when I caught him, I don't recall; I might have had hold of his ear and I might have bit it, it was bleeding; I might have gotten my thumb in Hill's eye, I don't know whether I did or not; I straightened Hill once with the club and then I saw there was no use to burst his head with it, as I could handle him; up to that time the club was on my arm, I then threw it down."

G. H. Frampton testified to coming on the scene about the time the difficulty was over. Witness said, "I saw it was Plummer, I was not quite in the crowd; about that time Hardy came in from the other side and grabbed Hill and stepped over Plummer's leg, and about that time Morgan started out at the west side and I saw him and took up the club; Plummer's gun was laying on his breast, just laying flat, was not pointed at any one; I don't know what became of the gun."

Other witnesses testified along the same line indicating that Morgan, Hill, and Plummer were fighting; that Morgan told Plummer Hill could whip him; that they got into a fight, and Plummer had a police billy, and that Hill grabbed Plummer, and Plummer grabbed Hill

around the neck and was hitting him, and they went to the ground together and continued to scuffle and fight, and that Morgan finally got hold of the policeman's billy that Plummer was carrying and struck Plummer several times on the head and shoulders.

The defendant took the stand in his own behalf, and stated, in substance, "It was about 5 or 5:30 in the after. noon when I met Morgan; two or three minutes before this occurred we were walking up the street near the O. K. Transfer, and Morgan stopped and called Plummer over and said, 'I want to speak to you a minute Rich'; I paid no attention to what was said; we had some difficulty and I said, 'Let's go down to the police station,' and the first thing I knew Rich drawed back and made a lick at Herman Morgan and I tried to grab his club; he hit me square over the head and I clinched him and he grabbed me around the neck and bit my ear, and hit me two or three times over the head, he had my head under his arm; he had his thumb in my eye, and we went down to the sidewalk; while we were down he got hold of my ear and chewed on it and still had his thumb in my eye, he had me dazed so I could not do anything; he hit me two or three times with his club after he got me down; some way I got hold of the club; he raised up and I raised up too and I saw he went after his gun; he had it right in front, right like that (indicating); I hit him hard with the club and he turned his arm up and I hit him on the arm; about that time Mr. Frampton ran in and he said, 'Let me have the club;' he got it and Morgan said, 'Look out, Ray, he is going to shoot you,' and I turned around and Morgan was holding the gun and I started down the street and got down to the Mistletoe, and Frampton said, 'Wait a minute,' and he took us to the county jail."

C. E. Hanks testified for the defendant that he saw Ray Hill after he was brought to jail the evening of the

difficulty; that his ear was bleeding and his eye was bloody, and his eye itself was red.

This, in substance, is the testimony, which clearly shows the difficulty on the street was what might be termed a general street fight. The record in this case shows that the defendant in this case and the other defendant, Herman Morgan, were tried separately.

The defendant in his assignment alleges there were nine errors committed by the court in the trial of the case. In his brief the defendant does not urge the errors assigned, but insists that the punishment inflicted in this case was excessive and unusual under the facts as disclosed by the record, and insists that the judgment in this case should be modified. The defendant in his brief states that Herman Morgan, who was with the defendant and took part in the difficulty, was given 30 days and a fine of $100, and insists that the judgment against the defendant should be modified to the same punishment as Herman Morgan received.

The defendant was convicted of an offense defined by section 1764, C. O. S. 1921. Under said section, the punishment may be imprisonment in the penitentiary or imprisonment in the county jail not exceeding one year. The testimony in this case is sufficient to sustain the verdict.

The Attorney General in his brief does not recommend a modification of the sentence and judgment, but suggests that this court has the power to modify the same, and that, if the court should deem it advisable to modify the judgment, it not be reduced below imprisonment in the county jail for a term of 90 days.

After a careful consideration of all the testimony in the case and the judgment and sentence of the court, we believe that the ends of justice would be properly met by a (modification of the sentence imposed in this

case from two years in the penitentiary to four months in the county jail of Comanche county, Okla. and, as modified, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.