## SLIM LUCAS v. STATE.

No. A-9570.  Jan. 25, 1940.
(98 P. 2d 933.)

L. W. Crutcher, of Holdenville, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the state.

DOYLE, P. J. The information in this case, after alleging time and place, charges that:

The said Slim Lucas, Horace Kelley, Clyde Duncan and Gene Ford, did, willfully, unlawfully, intentionally and feloniously, without justifiable or excusable cause, make an assault in and upon one George Alderson with a certain rock, said rock being then and there a dangerous and sharp instrument and weapon, and did then and there with said rock so had and held as aforesaid, strike, beat, bruise, cut, wound and injure the said George Alderson, with the unlawful, wrongful, and felonious intent then and there to do bodily harm and injury to him.

Upon a separate trial plaintiff in error was found guilty of assault with a dangerous weapon without justifiable or excusable cause, and punishment assessed at imprisonment in the state penitentiary for a term of one year and one day, on which verdict judgment was rendered on April 1, 1938, from which judgment this appeal is prosecuted.

Counsel for plaintiff in error in his brief states:

"No objections or exceptions were saved in the trial of this case in the lower court, and I will have to raise my assignments of error and argue them in the face of this

court's well-known rule, hoping this court will review the questions I am raising in this brief because of the fact that the errors committed in this trial were fundamental and deprived the defendant of his substantial rights."

The first assignment is:

"That the court committed error in forcing the defendant into a separate trial, which deprived him of his substantial rights."

Counsel contends that a severance could only be had at the request of either of the defendants, because the state by informing against them jointly had thereby elected to try them jointly and was bound by such election.

The record does not show that a severance was demanded.

The Code of Criminal Procedure provides:

"When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court." Section 3065, O. S. 1931, 22 Okla. St. Ann. § 838.

The record shows that when the case was called for trial, and after the jury was impaneled, the county attorney made an opening statement to the jury as to what the state expected to show by the evidence. Thereupon the defendant reserved the right to make his opening statement at the close of the evidence in chief for the state. The record does not show that any objection to a separate trial was made, and the motion for a new trial did not include this assignment.

It follows from the foregoing that this assignment is without merit.

The only other proposition presented by counsel is the alleged insufficiency of the evidence to support a conviction.

It is contended that the evidence is insufficient to sustain the conviction in that there is no corroboration of the testimony of the accomplice witness, Gene Ford.

It appears from the evidence that all the parties concerned were residents of Holdenville.

The first witness on behalf of the state, George Alderson, testified:

"My age is 51 years, I was at the OK Pig Stand on February 7, 1938, in company with Jerry Lee. I was sitting on a stool at the counter, I had not drank anything except a bottle of ginger ale, and Slim Lucas and Gene Ford came in and grabbed me and hit me several times, I was knocked senseless, when I came to, Bob Hooten was holding me, I was carried home, I am blind in one eye and for a week following I could not see out of my other eye, I have since been under the treatment and care of Dr. Wallace."

Gene Ford, the next witness, testified:

"My age is 19 years. On February 7th about 3 o'clock, I was in the City Cafe. I had a bottle of beer with the Duncan boy, Slim Lucas came in, sat down with us and ordered some more beer. Slim got up and went over and sat on a stool, called me to him and bought three more bottles. After we drank it he said the George Alderson had snitched on him for selling alcohol, and he wanted me to whip Alderson, I said, 'All right." We sat there about an hour, he bought more beer and kept saying he wanted me to whip Alderson and I told him I would. It was around 4:30 when Horace Kelley came in and called Slim aside and said they are out there, Slim said to the Duncan boy and Horace, 'Let's go.' I did not say anything. We went in Clyde Duncan's car. We found George Alderson at the OK Pig Stand. On the way there they said if I got in jail they would pay my fine, and they said they would not let George get the best of me, and would not let any one else interfere and get on me. We drove up behind the Pig Stand, when we got out Slim picked up a rock and told me to hit him with it." (Witness identified "Exhibit A"

as the rock Slim picked up and handed to him.) "The Duncan boy, Horace Kelley, Slim and I went in. We just tried to go in the back door, but it was locked. When Slim said, 'There is the snitching Son of a be——, get him.' I hit him twice, Slim grabbed a couple of beer bottles. Mrs. Stuart said 'Why don't you let Slim do his own fighting.' We came on up town, and they bought some more beer, they said I done a nice job, that if I got in jail they would pay my fine, and told me to sit tight. I was arrested about six o'clock, had a conversation with the sheriff the next morning, he asked me what I hit him with and I first told him with my fist, and then I told the same story I have told here on the witness stand. I did not have anything against George Alderson and hardly knew him, the only reason I beat him up was because Slim got me drunk; that he was one of the defendants named in the information."

Bob Hooten testified that Slim Lucas, Gene Ford and two other boys came in, Gene rushed to George Alderson and commenced hitting him with a rock; "Slim Lucas grabbed a couple of beer bottles and said, 'Don't any damn son of a b——interfere'. He ordered Slim out; Slim said he would have to put him out; that Thelma Dugan had called the law, and Emmitt Poteet and Hugh McConnell came immediately, he told them to take Alderson to a doctor, that they could pick up the boys some other time, and told them who they were. That George Alderson stated that he could not see anything, and they led him to a car, blood streaming down his face; that Ford hit the old man three or four times with a rock; that after he had pulled Gene Ford off Alderson he picked up a claw hammer and told Slim he would have to put him out, one of the boys grabbed Slim and said, 'Let's go,' and they left."

Witness said that he had been a peace officer and guard at the penitentiary.

Mrs. Lawrence Stuart testified that she owned and operated the OK Pig Stand, and was there behind the counter making a sandwich when Slim Lucas, Horace Kelley, Gene Ford and Clyde Duncan came in. That she

heard Bob Hooten say, "Quit that", and when she turned around Gene was hitting Mr. Alderson, who was sitting there, and Slim Lucas was cursing about Alderson snitching. Mr. Hooten told Slim to put the beer bottle down, and get out, that she then went out, Gene Ford came out and she said to him, "Why don't you let Slim Lucas do his own fighting," and he said, "Oh, I don't know."

Thelma Dugan testified that she was employed at the OK Pig Stand, and saw George Alderson and Jerry Lee there. When she heard the car drive up she started around the house to get the orders, they first tried to get in the back door, it was locked and they came to the west door. When they came in George Alderson was sitting on a stool, facing east, with his back to them. Slim and Gene came in first. Slim said, "There are the snitches", and she saw Gene Ford hit George Alderson twice, heard Slim say everybody stand back and let Gene alone, and she went to call the officers.

The state rested and the defendant interposed a demurrer and moved the court for a directed verdict of not guilty, which was overruled.

On the part of the defence, Horace Kelley testified that he was at the City Cafe about 5 o'clock, Gene Ford said, "I haven't seen Shorty and Jerry Lee today," and he said, "I just saw Jerry Lee and him out at the Pig Stand," Ford said, "Let's go out there, Slim", Slim said, "All right", and asked the Duncan boy to drive them out there. That they drove in behind the OK Pig Stand, they all got out and went in; that he did not see the rock introduced in evidence in anybody's hand; Gene Ford went in first, Slim next, witness and Duncan next. Gene walked up and said something to Alderson, and hit him a couple or three licks. Bob Hooten told Gene to get out and told

Slim to get out, then picked up a hammer or something. Slim said he would get out. Then Gene Ford, who had gone outside, came in and said, "Slim, let's go", and Slim went out and got in the car and returned to the City Cafe.

As a witness in his own behalf, Slim Lucas testified that he went to the City Cafe about 3 o'clock to see his wife, who was going to work there the next day, saw Turner Parker, Duncan and Gene Ford sitting in there drinking beer; that he did not sit down, they asked him to have a bottle of beer and he did so, one of the bunch asked him where he had been and he told them he had been in jail because a pint of alcohol had been sold; that he did not know who had snitched, but that was the reason he was arrested. Gene Ford told him that he would whip Jerry Lee and George Alderson, because they snitched. He told Ford he did not know whether or not they snitched. Ford said he would whip one or both of them. He said he had just got out of jail and did not want to get back in and told Ford to forget it, let it go, he didn't care about them being whipped.

Gene Ford asked him if he had seen Alderson and Lee since he got out of jail, he said he had not. Horace Kelley came in and told Gene Ford where he saw them. Horace said he had 60 cents and they would go out there and drink beer. Clyde Duncan said he would take us out there for a bottle of beer. Gene Ford had not said anything about whipping them, except when witness first came in. That he never told Gene Ford or asked him to whip George Alderson and Jerry Lee, and never told him that he would pay his fine if he would do it. When they got out of the car and went into the pigstand, Gene said to Alderson: "You are the guy that done the snitching, you are snitching around here, are you?" and hit him with his fist; that he didn't tell the people to stand back and didn't pick up any

beer bottles. Bob Hooten said," Don't do that, you boys get out." Gene quit fighting and walked to the door, and Hooten said, "Slim, you get out." He said, "Bob, I will get on out, but don't try to throw be out." Witness said he never saw the rock before it was introduced at the preliminary. That he did not have anything to do with Gene Ford whipping George Alderson.

At the close of the evidence the defendant again demurred to the evidence and moved the court to direct the jury to return a verdict of not guilty, which motion was overruled.

The witness Gene Ford was an accomplice. Under the statute he was a competent witness. The fact that he was an accomplice going only to his credibility and requiring proof independent of his testimony and corroborative thereof which tended to connect the plaintiff in error with the commission of the offense.

It is a settled rule that where two or more persons are jointly informed against, the state may use one of such defendants, either before or after conviction, as a witness against the others, without first dismissing the prosecution against the defendant so used as a witness. Rudolph v. State, 32 Okla. Cr. 265, 240 P. 761.

It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or factor by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof. Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Davis v.

State, 18 Okla. Cr. 453, 196 P. 146; Hollingshead v. State, 21 Okla. Cr. 306, 207 P. 104; Mitchell v. State, 59 Okla. Cr. 393, 60 P. 2d 627.

It was the exclusive province of the jury to judge of the weight of the evidence, and the credibility of the witnesses. The jury accepted as true the testimony of the state's witnesses, and, having done so, it is not the province of this court to substitute its judgment for that of the jury.

Upon a consideration of the whole case, we see no reason to doubt that this conviction was fully warranted by the evidence.

Finding no substantial merit in any of the propositions urged for a reversal of the judgment, the same must be affirmed. It is so ordered.

BAREFOOT and JONES, JJ., concur.