## ROLAND BAYNE v. STATE.

No. A-9788. April 23, 1941.
(112 P. 2d 1113.)

■■■■■■■

■■■■■■■

■■■■■■■

■■■■■■■

■■■■■■■  ■■■■■

■■■■■■

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and L. J. York, Co. Atty., of Stillwater, for the State.

Walter Mathews, of Cushing, for defendant.

BAREFOOT, P. J.   Defendant Roland Bayne was charged jointly with Clifford Thompson in the district court of Payne county with the crime of attempt to kill, was tried separately and convicted and sentenced to serve one year in the reformatory at Granite, and has appealed.

The information in this case was filed under Oklahoma Statutes 1931, section 1873, O. S. A. title 21, sec. 652, which is as follows:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process is punishable by imprisonment in the penitentiary not exceeding ten years."

The court, in his instructions to the jury, instructed on the above statute and also on two included statutes,

Oklahoma Statutes 1931, section 1870, O. S. A. title 21, sec. 645, which is as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or airgun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

And, also, Oklahoma Statutes 1931, sections 1865, 1866, and 1868, O. S. A. title 21, sections 641, 642, and 644, which are as follows:

(1) "An assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another."

(2) "A battery is any willful and unlawful use of force or violence upon the person of another."

(3) "Assault, or assault and battery, shall be punishable by imprisonment in a county jail not exceeding thirty days, or by a fine of not less than five dollars or more than one hundred dollars, or both, at the discretion of the court."

The jury returned the following verdict:

"We, the jury, being duly sworn and empaneled in the above-entitled case, do on our oaths find the defendant, Roland Bayne, guilty of the crime of assault with intent to do bodily harm, as charged in the information but we are unable to agree upon the punishment."

The court sentenced the defendant to serve one year in the reformatory at Granite.

It is contended that the punishment inflicted is not authorized by the verdict or by the law, it being contended that, under the verdict and judgment based thereon, the

defendant was only found guilty of an assault, and that the court erred in giving defendant a sentence of one year in the reformatory at Granite. Defendant in his brief cites two cases from this court in support of this contention. Feaster v. State, 15 Okla. Cr. 366, 177 P. 124; Polk v. State, 15 Okla. Cr. 324, 176 P. 538. We first refer to the case of Vineyard v. State, 22 Okla. Cr. 76, 209 P. 783, 784, which expressly overrules the first syllabus of the case of Polk v. State, supra. In this opinion Judge Matson says:

"The first paragraph of the syllabus in the Polk Case is too broad in statement, in conflict with earlier decisions of this court, and is expressly disapproved."

The first paragraph deals with the question here involved.

The later cases of this court have uniformly held that the statutes above quoted are included offenses and that a charge under the first will include an offense under the second and third, and that it is the duty of the court to so instruct the jury when the facts justify. Clemons v. State, 8 Okla. Cr. 452, 128 P. 739; Horton v. State, 35 Okla. Cr. 80, 248 P. 878; Wheeler v. State, 66 Okla. Cr. 127, 90 P. 2d 49; Ponkilla v. State, 69 Okla. Cr. 31, 99 P. 2d 910.

The Vineyard Case is also in direct conflict with the Feaster Case, and while not specifically named therein, it virtually overrules the decision in that case.

As stated above, the defendant was in the instant case charged under Oklahoma Statutes 1931, section 1873, O. S. A. title 21, section 652. In the case of Coleman v. State, 16 Okla. Cr. 579, 194 P. 282, 283, the verdict of the jury was in almost identical terms with the verdict rendered in this case. It stated:

" 'We, the jury impaneled, sworn, and charged in the above-entitled cause, do upon our oaths find the defendant guilty of an assault to do great bodily harm as charged in the information herein, and leave his punishment to the court."

The court says:

"The sufficiency of the verdict to sustain the judgment is raised for the first time in this court. It is now urged that the verdict is not responsive, and is too indefinite and uncertain to sustain the judgment rendered.

"By section 5926, Rev. Laws [1910], 22 Okla. St. Ann. § 919, it is provided:

" 'If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury.'

"By section 5927, 22 Okla. St. Ann. § 920, it is, among other things, provided:

" 'But no judgment of conviction can be given unless the jury expressly find against the defendant, upon the issue.'

"The verdict is not in proper form; but, when considered in connection with the charge in the information and the instructions given by the court, it is sufficiently definite and certain as to the offense of which the defendant was convicted, and is in fact a verdict of guilty of assault with a dangerous weapon with intent to do bodily harm.

"It is well settled that a verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper. Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824; Walker v. State, 11 Okla. Cr. 339, 127 P. [895] 896.

"Says Mr. Bishop:

" 'The language of the verdict, being that of "lay people," need not follow the strict rules of pleading, or be

otherwise technical. Whatever conveys the idea to the common understanding will suffice, and all fair intendments will be made to support it.' 1 Bish. New Cr. Proc. (4th Ed.) § 1005.

"While the verdict is defective, its language expresses the intention and purpose of the jury to find the defendant guilty of assault with a dangerous weapon with intent to do 'bodily harm as charged in the information herein,' and the defendant should have objected to the verdict when returned, which would have called the attention of the court to its defective form and given opportunity for its correction; and, having failed to do this, the defendant waived the defects in the form of the verdict."

There can be no question but that it was the intention of the jury in the instant case to find the defendant guilty of a violation of Oklahoma Statutes 1931, section 1870, O. S. A. title 21, sec. 645, although the words of the statute, "without justifiable or excusable cause" or "with any sharp or dangerous weapon", are not stated in the verdict. As stated by Mr. Bishop as above quoted: "Whatever conveys the idea to the common understanding will suffice, and all fair intendments will be made to support it."

The evidence in this case is conflicting. It reveals that the codefendant Clifford Thompson had just returned from serving a sentence in the Granite Reformatory on the date of this affair. He met the defendant at the home of a friend, and they then went to the home of Clifford Thompson's mother looking for his wife, from whom there was some estrangement. He was there told that she probably was at the home of the prosecuting witness, Harvey Benton. They went to his home and, according to the evidence of the state's witnesses, they did not knock at the door and did not make it known that they were there. About 10 o'clock p. m., Harvey Benton went outside the door, and according to his evidence was attacked by both

defendant and his codefendant Clifford Thompson. That they both attacked him and both cut him with a knife. That he felt both knives strike him at the same time. The mother of the prosecuting witness, his brother-in-law and a child of 15, who was in the house at the time, all testified that no one knocked at the door, and that when they heard Harvey Benton scream they ran out, and he was lying on the ground and they saw the defendant and Clifford Thompson standing near the scene, and that the defendant grabbed Clifford Thompson and they ran away. The evidence of Dr. John W. Martin was that the prosecuting witness had been cut in three different places. They were skin cuts and lacerations, a small wound in the right side and chest, a long scratch across the back, and another wound on the right leg. Three or four stitches were taken in one of the wounds, but they were not serious, and the prosecuting witness attended highschool in Cushing the next day.

The prosecuting witness, his mother and his brother-in-law testified that the defendant and Harvey Benton had been good friends, and that defendant never had any motive in attacking him. The defendant testified that, when they went to the home of the prosecuting witness, his codefendant Clifford Thompson knocked on the door and asked if his wife was there, and that he replied: "It isn't none of your damned business", and that they started to fight, and that the only participation of himself was that he tried to separate them. That he did not at any time cut the said Harvey Benton. That he did not have a knife, and that after the difficulty was over and the persons in the house came to the door, he got hold of Clifford Thompson and got him to leave the premises. The next day a knife was found in the toilet where one of the witnesses had seen his codefendant Clifford Thompson

throw the same. Officers testified that when they arrested the parties in the morning at Clifford Thompson's home after the difficulty, they were in bed and the defendant was intoxicated, and that they had trouble in arresting him. His explanation of this was that he was asleep and not easily awakened.

Max Rosson, who was with the defendant and Clifford Thompson when they went to the home of Clifford Thompson's grandmother, testified to a conversation between these parties in which he stated: "They were talking about going down and beating Harvey up, and I got them back up in the house and got them to go back up to my place."

He did not know which one made this statement. He testified they had been drinking whisky and pop. The evidence also revealed that the defendant had at one time been convicted of petit larceny and of assault and battery. It will be observed that the evidence is conflicting, and under the uniform holding of this court, the judgment and sentence will not be set aside under these circumstances. The jury did not assess the punishment, but it was assessed by the court.

We have carefully weighed the evidence and have come to the conclusion that justice would be best subserved by modifying the judgment and sentence to 120 days in the county jail of Payne county, and it is so ordered.

JONES, J., concurs. DOYLE, J., absent.