## TOM TIPLER v. STATE.
No. A-10241.   Dec. 8, 1943.
(143 P. 2d 829.)

J. Walter Long, Jr., of Okemah, and Charles G. Oz-mum, of Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Roy P. Parham, Co. Atty., of Okemah, for defendant in error.

BAREFOOT, J. Defendant, Tom Tipler, was charged in the district court of Okfuskee county with the crime of assault with a dangerous weapon, was tried and convicted; his punishment assessed by the court at a term of five years in the State Penitentiary, and he has appealed.

The brief filed by the defendant in this case presents only one issue: that the evidence is insufficient to sustain the judgment and sentence; and the suggestion that the punishment given by the court, the jury having returned a verdict of guilty and left the punishment to the court, is excessive. Other questions are raised in the motion for new trial, and the motion in arrest of judgment. All of the questions may be considered together.

This charge was the outgrowth of a whipping administered on March 29, 1940, by the defendant to the prosecuting witness, L. C. Scott, 15 years of age, and who was confined at the Boley Training School for Negro Boys, in Okfuskee county. The defendant was a guard at the training school.

In the charging part of the information it is alleged:

"That at and within the county and state aforesaid, and on or about the day and year aforesaid, the said Tom Tipler, then and there being, did then and there knowingly, wilfully, unlawfully, wrongfully, feloniously, and

without justification, or legal excuse, make an assault in and upon one L. C. Scott with a certain dangerous weapon, towit: A piece of leather 3 inches wide, 20 inches in length, and ¼ inch thick, weighing approximately ¾ of a pound; the same not being a dangerous weapon per se, but being one used in such a manner and to such an extent as did then and there constitute a dangerous weapon; and the said Tom Tipler did then and there, with said weapon, had and held in the hands of him, beat, hit, strike, severely wound and injure the said L. C. Scott in approximately 200 different places on his body, hands, and legs, causing abrasions (broken skin) over 2/3 of the back of the said L. C. Scott from his shoulders to his waist; and abrasions (broken skin) over the entire buttocks of the said L. C. Scott with injuries to subcutaneous tissue on his said buttocks; the assault lasting over a period of time beginning at 12:15 on said day and lasting until 4 a. m. on said day; with the unlawful, wrongful and felonious intent, then and there on the part of the said Tom Tipler to do great bodily harm and injury to the said L. C. Scott;"

The statute under which defendant was charged in section 1870, O. S. 1931, Tit. 21 O. S. A. 1941, § 645, which is as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year."

There is a slight reference in defendant's brief to the fact that the assault was committed with a leather strap, which was not a dangerous weapon per se. This fact is admitted by the state in the information.

The question of what constitutes a dangerous weapon under this statute has been considered by this court on numerous occasions. Moody v. State, 11 Okla. Cr. 471, 148 P. 1055; Spelman v. State, 26 Okla. Cr. 47, 221 P. 1044; Roberts v. State, 29 Okla. Cr. 64, 232 P. 450; Reardon v. State, 51 Okla. Cr. 432, 2 P. 2d 100.

In the late case of Beck v. State, 73 Okla. Cr. 229, 119 P. 2d 865, 868, Judge Jones in rendering the opinion gave an exhaustive review of the authorities from this and other states. The instrument involved in that case was an automobile. The court said:

"We have many articles which are not dangerous weapons per se, but which from the manner of their use may become dangerous weapons. A chair, a stick, a clock, and many other articles are not dangerous weapons per se, but the manner of their use might make them a dangerous weapon. This court, in the case of Winkler v. State, 45 Okla. Cr. 322, 283 P. 591, and in the case of Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 799, has specifically held that where an automobile is being operated in a manner forbidden by law, and the proof shows that the accused, while so operating the automobile, ran into and injured a person lawfully on said highway, that the operation of the automobile in such manner takes the place of and supplies the unlawful intent. In each of these cases, this court sustained convictions for assaults committed with an automobile."

See, also, Williamson v. State, 82 Fla. 980, 110 So. 124, 53 A. L. R. 250; People v. Clink, 216 Ill. App. 357; People v. Anderson, 229 Ill. App. 315; Brimhall v. State, 31 Ariz. 522, 255 P. 165, 53 A. L. R. 231; Bleiweiss v. State, 188 Ind. 184, 119 N. E. 375, 122 N. E. 577; People v. Benson, 321 Ill. 605, 152 N. E. 514, 46 A. L. R. 1056; Lucas v. State, 68 Okla. Cr. 359, 98 P. 2d 933; Cotanney v. State, 67 Okla. Cr. 148, 93 P. 2d 39; Bayne v. State, 72 Okla. Cr. 52, 112 P. 2d 1113.

We see no reason why a strap such as was used in the instant case could not, by the manner in which it was used, be considered a dangerous weapon, as provided by the statute above quoted.

The record reveals that the prosecuting witness, L. C. Scott, was a boy 15 years of age. That he had been sent to the Boley Training School for Negro Boys from Oklahoma county. That defendant was a guard at this institution. That in the afternoon of March 29, 1940, a woman from Tulsa had come to the institution to see her boy, and that she was accompanied by two other citizens. That when she got out of the car, she left her purse containing about $3 on the seat. When she returned to the car, someone had taken the money from her purse. L. C. Scott and some other boys were playing in close proximity to the automobile. He was questioned with reference to the theft of the money by William Hazel, superintendent of the school, and after being whipped with a strap, admitted that he took the money, but told them he had given it to one of the boys who had gone with the band to Clearview. The band did not return until about 11:45 that night. The Scott boy was detained until the return of the band. Tom Tipler, the defendant, came on duty just before 12 o'clock midnight, and was told of the incident. He informed the prosecuting witness that if Willie Burks did not have the money when the band came in, he was going to whip him. When Willie Burks returned, did not have the money and said he knew nothing about it, the Scott boy was taken to the playroom by defendant, and ordered to take off his clothes. He was then told to lay on a table, and was whipped unmercifully by the defendant. There is some conflict as to the number of times he was whipped, and the manner of the whipping. He told different stories as to where the money was, and was taken to different places

to search for it, but the money was not found. Each time, he was returned to the playroom, and again whipped by defendant with the "cat" (being the leather strap described in the information). As a result of the whipping, the witness had temperature for several days, and was confined to the hospital for a period of two weeks. An investigation was conducted by Mrs. Mabel Bassett, Commissioner of Charities and Corrections; by the State Board of Public Affairs, which had charge of the Institution; and by the county attorney of Okfuskee county.

Two doctors, one from Oklahoma City and by whom the mother of the prosecuting witness was employed, and the other the doctor at the institution, testified as to the results of their examinations of the witness. Mrs. Bassett and the Hon. Roy W. Cox, a member of the State Board of Public Affairs, also testified. All of these witnesses testified as to the condition of the witness. Their evidence is well illustrated by the testimony of Mrs. Bassett and Doctor A. P. Harris.

Mrs. Bassett testified:

"Q. Just state to the jury, as well as you remember, what you did. A. Well, I came to Boley to the school to make the investigation. I was down at the subprison at Atoka when I received a telephone that this boy had been severely beaten in school, and I came over and spent the day. When I arrived, I saw the superintendent, Mr. Hazel, and talked with him a few moments and then went to the hospital where the boy was, and the boy, J. (L.) C. Scott, was lying on the bed in the hospital, lying on his stomach, because he was unable to lie on his back. I pulled the sheet down and looked at his body. Q. Tell what you saw. A. His entire buttocks was raw clear across from one side to the other. They had some sort of cheesecloth over it, dipped in oil. I attempted to pull this cloth up a little bit, but it stuck to the flesh. He had marks and welts and bruises from his neck down to his ankles. He was

just a mass of those bruises. Some of them look like cuts. I sent for the doctor, Dr. Sanders, and had him come over because I wanted to talk to him about that, and at that time he took the boy's temperature and he had fever and the doctor told me he had been running some temperature. This was on Thursday. The first I heard of it was on Wednesday night, and I came to the school on Thursday morning, and this had happened Friday night, and so it was several days between the time of the beating and the time I saw the boy. I asked the doctor if he could put something else on him. The boy's entire buttocks was raw. The doctor said he would try to get something else to keep the cloth from sticking to the flesh. I put in the day there investigating the matter and talked to a number of the boys and with two of them who were there that night when the beating occurred, and then about 4 o'clock in the afternoon Mr. Cox and Mr. Smartt, of the Board of Affairs, came to the institution. From that time on until we left that evening we worked together and in the meantime we called the county attorney. The boy was in a very, very bad condition. The doctor there at the school, Dr. Sanders, so stated to me."

And Doctor Harris testified:

"Q. Just state to the jury what you found his condition to be. A. Well, we found him lying on his stomach in bed with a sheet lying over him. We found much the same condition that Mr. Cox and Mrs. Bassett have testified about. We found that nothing had been done for him but that merthiolate had been poured over him. And there were scars and abrasions on his back and all of the skin had been denuded off the buttocks and there were scars on both legs. I was told that nothing had been done for him except alcohol and tincture of merthiolate had been put on him. I was told that a doctor would be called. The boy was unable to talk. We could not understand what he said at all because, apparently, of the injury to his neck, as near as I could tell. I do not know whether he was running a temperature. I just saw what I saw and I had seen enough."

As far as the law of this case is concerned, the question of whether or not the prosecuting witness took the money may be eliminated. If he did take it (which he now denies, and says that he admitted it only to keep them from whipping him), there was a law for his punishment, and no employee of the institution where he was confined had the right to administer to him such punishment as the evidence reveals was administered in this instance. It just proves that a little power cannot be placed in the hands of some individuals without their abusing it, and in this instance it was certainly abused. The fact that others may have punished the witness at this time in no way justifies the cruel punishment administered by the defendant.

Under the evidence, there can be no question but that the jury was justified in finding that the punishment administered by the defendant was without justification, and in a manner that should be condemned by the superintendent and others in charge of the institution. This boy may have been a very bad boy, and a reasonable whipping by his parents, guardian, or proper authority might have been a good thing, but certainly the punishment he received was unjustifiable and uncalled for.

The jury in the instant case was unable to agree upon the punishment to be inflicted. Under the law this was left to the court, and the court assessed the maximum punishment provided by the statute—five years in the State Penitentiary.

We have carefully examined the cases involving this statute and appealed to this court, and have found the maximum punishment assessed in very few cases. In many instances the judgment and sentence has been modified. Williford v. State, 36 Okla. Cr. 270, 253 P. 1035; Tyler v. State, 39 Okla. Cr. 436, 266 P. 516; Hill v. State,

42 Okla. Cr. 366, 277 P. 595; Decker v. State, 44 Okla. Cr. 186, 279 P. 915; Felder v. State, 47 Okla. Cr. 214, 287 P. 792; Williams v. State, 52 Okla. Cr. 336, 5 P. 2d 410; Bayne v. State, 72 Okla. Cr. 52, 112 P. 2d 1113; French v. State, 73 Okla. Cr. 141, 118 P. 2d 664.

In the instant case the evidence revealed that others than the defendant had whipped the prosecuting witness on this occasion. One of them struck him twice with a trace chain on the morning after he had been whipped by the defendant, and before his examination by the doctors and others. Two of these parties were charged in the courts of Okfuskee county, but were released, one upon preliminary and the other never prosecuted. The reason therefor is not revealed by the record.

The defendant produced excellent witnesses from his home town of Lawton, where he had served as a police officer, and also citizens of Okfuskee county as to his good character as a law-abiding citizen; and while his acts in this case cannot be condoned, after a careful examination of the record we have come to the conclusion that the punishment inflicted is too severe, and that justice demands that the judgment and sentence should be modified from five years in the penitentiary to two and one-half years in the penitentiary, and, as so modified, the judgment and sentence of the district court of Okfuskee county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.