Edgar Carroll TACKER, Plaintiff In Error,

v.

STATE of Oklahoma, Defendant In Error.

No. A–12343.

Criminal Court of Appeals of Oklahoma.

Nov. 7, 1956.

William N. Mounger, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

Edgar Carroll Tacker was convicted in the District Court of Oklahoma County for the crime of assault with a dangerous weapon and was sentenced to serve six months in the county jail.

The proof of the State showed that on the night of August 10, 1955, the defendant, Tacker, struck one Jerry Bieser over the head with a two and one-half foot length of chain cutting Bieser's scalp so deeply that he was taken to Mercy Hospital and four stitches were taken to close the wound. About 11 o'clock on that night Tacker had struck a couple of amputees who were drinking beer in the Blue Note Tavern in Oklahoma City. When he did this many of the people in the tavern commenced to yell at Tacker and he ran out of the tavern through the back door. Bieser testified that he walked out to talk to Tacker to find out why he had struck the amputees and that Tacker hit him over the head with the chain. Officers were notified and they found Tacker walking on the street a short

while later and when the officers accosted him, Tacker had the chain in his possession and admitted to the officers that he had struck Bieser with it. The chain was identified and admitted in evidence.

Tacker did not testify but Kenneth Wayne Minnick testified that he and Tacker went together that evening to the tavern. He testified that shortly before midnight Shaw and Robinson, who were two men who wore artificial limbs, were sitting at a table in the tavern drinking beer; that the witness and Tacker approached Robinson and Shaw and Tacker asked Shaw if he was going to buy any beer and Robinson popped off to Tacker and a fight started. That after the fight ended a bunch of people in the tavern started chasing the witness and Tacker so they ran out the back door. Minnick told Tacker to go ahead and run and he would hold off the crowd; that Bieser came out the door and said, "Let's get him." That he did not see what occurred between Tacker and Bieser but he heard Tacker yell, "Let's run," so he turned around and started running and so did Tacker. He and Tacker were both 19 years of age.

It is first contended that the trial court erred in overruling the defendant's demurrer to the evidence of the State for the reason that the evidence was insufficient to sustain a conviction for the crime of assault with a dangerous weapon, it being contended by the accused that there was no description of the chain by any of the witnesses for the State other than the testimony of the police that it was a two and one-half foot chain.

This prosecution was brought under the provisions of 21 O.S.1951 § 645. In construing the statute, we have held that often an instrument might not be a dangerous weapon per se, but the manner of its use might under some circumstances make it become a dangerous weapon. We have held that such an instrument as an ordinary pair of shoes might, by the manner of its use, constitute a dangerous weapon, Smith v. State, 79 Okl.Cr. 151, 152 P.2d 279; also a leather strap, Tipler v. State, 78 Okl.Cr.

85, 143 P.2d 829; an automobile, Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865; and metal knucks, Reardon v. State, 51 Okl.Cr. 432, 2 P.2d 100.

It is true that there was no description of the chain other than its length shown in the record. However, the chain was introduced in evidence and was before the jury for their consideration and in instructions numbers 6 and 7 the court clearly submitted the issue to the jury. Those instructions stated:

"No. 6. You are instructed that the term 'dangerous weapon' is defined as any instrument or weapon, which from the manner of its use, its size, weight, and nature, and all the facts and circumstances pertaining thereto, is likely, if used against a human being, to produce death or great bodily harm.

"No. 7. You are further instructed that a 2½ foot length of chain is not necessarily in and of itself a dangerous and deadly weapon, but may be so according to the manner of its use and the part of the body struck by it. So, in this case, even though you may find beyond a reasonable doubt that the defendant struck the said Jerry Oscar Bieser on the head with said chain, and that the striking was wrongful and unlawful and done with an intent on the part of the defendant, Edgar Carroll Tacker, to do bodily harm to the said Jerry Oscar Bieser, you would still not be justified in finding the defendant guilty of the particular crime of Assault with a Dangerous Weapon, unless you further find and believe beyond a reasonable doubt that the chain or weapon used was in fact a dangerous weapon and one likely to cause great bodily harm, taking into consideration the size, nature, condition, and character of the instrument, the manner in which it was used, the part of the body struck, and together with all of the other facts and circumstances as shown by the evidence in this case."

**476**

The jury considered the wounds inflicted upon Mr. Bieser and determined under the testimony that the chain was a dangerous weapon from the manner of its use.

It is further contended that the proof showed affirmatively that the defendant was acting in self-defense. Defendant did not testify and the only evidence that did indicate self-defense was the testimony of defendant's companion that he heard Bieser say when he came out of the tavern, "Let's get him." The evidence of the State was entirely to the contrary; however, the court fairly submitted to the jury the issue of self-defense in instruction number 8. The jury evidently concluded that Tacker and his companion were a couple of young ruffians who had determined to stir up trouble wherever they could find it and were anxious to fight. There was no attempted explanation of why the accused should be carrying a length of chain around in his possession.

It is argued that the punishment is excessive. We do not think so when it is viewed in the light of all the attendant circumstances surrounding the case.

Affirmed.

BRETT and POWELL, JJ., concur.