Johnnie Lee GRATE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–462.

Court of Criminal Appeals of Oklahoma.

Dec. 16, 1974.

 

Mac Oyler, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Johnnie Lee Grate, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Oklahoma County for the crime of Unlawful Distribution of a Controlled Dangerous Substance, Heroin. Punishment was assessed at Five (5) years imprisonment in the State Penitentiary and a fine of $500.00. From a judgment and sentence in conformance with said verdict the defendant has perfected his timely appeal.

The evidence adduced at trial is essentially as follows:

Michael Rex McGeehon testified he was a forensic chemist salaried by the Oklahoma City Police Department and under the supervision of the State Bureau of Investigation. It was stipulated as to the transportation and identity of the substance examined. McGeehon testified he performed certain chemical tests on the substance, concluding it contained diacetyl morphine, commonly referred to as heroin. State's Exhibit No. 1 was identified as an envelope containing a cigarette package and a tin foil packet which contained heroin was identified as State's Exhibit No. 2. Both exhibits were introduced without objection.

Preston Leon Bonds testified he was employed as an undercover narcotic officer with the Oklahoma City Police Department on September 2, 1973. At approximately 9:45 p. m. on that date, he saw the defendant at Eddie Henry's Cafe in Oklahoma City for the purpose of attempting to make a heroin purchase. He engaged the defendant in conversation, and after talking with him for awhile, got around to discussing drugs. Officer Bonds mentioned he would like to buy a half gram of heroin and asked defendant if he could obtain it at $35.00, what he believed to be the going street price. The defendant stated he would check around with some of his people and later told Bonds he was able to contact someone and would have to go meet with them. Bonds gave the defendant $35.00 and he left, returning seven minutes later and handing Bonds a cigarette package which contained a smaller package inside. Bonds left and proceeded to his supervisor's (Buddy Burns) house. He identified State's Exhibit No. 2 as the packet which he delivered to Burns.

On cross-examination, Bonds testified that a prostitute informant by the name of Cindy Shomberg had accompanied him on the night in question. Cindy Shomberg was also working with the Oklahoma City Police Department and was the one who initiated the conversation concerning drugs with the defendant. Bonds did not know Cindy Shomberg's present whereabouts—stating she was assigned to work with him by Detective Buddy Burns. Cindy told the defendant that she was hurting and that she needed a hit of heroin. When asked if Cindy was faking addiction, Bonds testified that "she was pretty much for real." He had seen many heroin addicts in the past and Cindy had the withdrawal symptoms of heroin addiction while talking to the defendant. Cindy's symptoms as he observed them were: She had cold, clammy hands and he couldn't shut her up, she was talking very rapidly, the foremost thing on her mind was trying to obtain some heroin, to get near it, around it or make some kind of connection along the line so that she could obtain some. She represented to the defendant that Bonds was the party that had the money and she was wanting the heroin. Bonds stated he was faking heroin addiction as a part of his cover by wearing a methadone bracelet and telling the defendant that he was on the methadone program at the Veteran's Administration Hospital. When Bonds

asked the defendant if he could get the drug, defendant replied: "I'll try to get it for you, Homes." Bonds explained that "Homes" is an expression among black people implying more than a friend, comrade or pal.

On re-direct examination, Officer Bonds testified that $35.00 was not the market value of half a gram of heroin on the street. The market value would be closer to $45.00 to $50.00, the price depending on the quality of the heroin—with the quality of this heroin registering pretty heavy. On re-cross examination, Officer Bonds stated the defendant represented to him that he paid exactly what Bonds paid him for the substance. In response to the question of whether the defendant said the people that had it wanted $35.00, Bonds stated,

"Well, sir, what he had actually told me and in all honesty, was that it apparently cost more than that, and that by him knowing him, that he could get it, you know, at lower price and that he would give it to me for the price that it cost him." (Tr. 113)

George A. "Buddy" Burns testified he was employed as a detective with the Oklahoma City Police Department assigned to the narcotics squad on September 2, 1973, and that Preston Bonds was functioning as an undercover officer investigating narcotic traffic on the east side of Oklahoma City during this period of time. He met with Officer Bonds the evening of September 2, 1973, at approximately 11:00 p. m. at which time he received the cigarette package and contents. He conducted a field test which was positive for an opiate and secured the substance as evidence ultimately for the State Chemist. The parties stipulated to the chain of custody of the evidence.

On cross-examination Detective Burns testified he was not present at Eddie Henry's Cafe the night of September 2, 1973, and that he knew a Cindy Shomberg who was working with him as his confidential informant at that time. The State then rested.

The defendant then called Officer Bonds as a defense witness. Bonds testified that he had occasion to go to defendant's home on September 3, 1973, to attempt another heroin buy from the defendant. When Bonds asked if defendant had anything, the defendant said "no, that he didn't, that he wasn't doing anything." Bonds asked if he could get hold of something and defendant stated:

". . . that he could try and check with his people and that if he could get hold of them that maybe he could get something for me. But, otherwise, that he didn't know where any was because he hadn't been doing anything himself."

When asked if defendant used the word "favor" on September 2, 1973, Bonds replied:

". . . I don't believe the word he used was 'Favor,' but in all sincerity he did give me the impression that he was doing it as a favor. That he was going out of his way to do that because of the fact that he hadn't been associated with it . . ."

Bonds then testified he was unsuccessful in his attempt to make the subsequent purchase. On re-direct examination, Officer Bonds stated that when he was attempting to make the unsuccessful purchase, the defendant told him that he ought to leave the stuff alone.

The defendant testifying in his own behalf then stated that he was 35 years old, married with one child, and was in the military service from 1957 to 1961, receiving an honorable discharge. He had no felony convictions and no misdemeanor convictions other than city traffic. On September 2, 1973, he was at Eddie Henry's Cafe in Oklahoma City between 9:00 and 10:00 p. m. when he saw Cindy Shomberg and Preston Bonds. Cindy told him that she and her friend were hurting and needed a shot of heroin. Defendant asked why she came to him and Cindy replied that he knew a lot of people and might be able to help her. Defendant told her he didn't sell heroin, but Cindy kept begging, stating she

was "really hurting real bad." Defendant observed that her nose was running and she looked sick. Cindy said she didn't have any money but Bonds did, and if defendant got the stuff it would be Bonds' money but she would get some of it and "take care of her sickness." She further stated she was going to get it any way she could. Defendant finally agreed to check and see if he could find a source. They left and returned about a half hour later. Defendant told them he had checked and might be able to get it for them if he could find the right guy. Defendant checked further and was told the price would be $35.00 which Bonds supplied. Defendant took the $35.00 to "Tony" at a bar about three blocks away. Defendant testified he had no type of business arrangement with Tony and made no profit. When defendant returned, Bonds was in a parking lot across from Eddie Henry's and he gave Bonds the substance. Defendant then told Bonds that since he was on the methadone program he should leave the stuff alone. Defendant stated he obtained the heroin for them because he felt bad the way they were begging him "like they were real sick." Defendant stated he had seen people on heroin and had some friends get hung up on it and knew it had to be "real painful." Defendant further stated that Bonds had told him that he missed his methadone shot and was really sick and couldn't get another shot until the next day.

On cross-examination, defendant testified he did not sell the heroin; he got it for them and that Tony took the money. Defendant testified he didn't know Tony's last name, although he had known him for about 8 years. He had met Tony on the streets previously and this was the only time he got heroin from him.

As will become apparent it is only necessary for us to consider defendant's first proposition in error wherein he urges that the trial court erred in overruling defendant's demurrer to the evidence and motion for directed verdict of not guilty due to the obvious entrapment of the defendant by the State. After a thorough examination of the evidence in the instant case it is our opinion that the defendant's argument is meritorious.

In the recent case of Kissick v. State, Okl.Cr., 504 P.2d 889, this Court, citing Kite v. State, Okl.Cr., 490 P.2d 1402, held that whether a defendant has been entrapped is to be determined by the jury, unless the undisputed facts as a matter of law establish same.

In the instant case it is uncontradicted that undercover agent Bonds and police informer Cindy Shomberg originated the criminal design and implanted it in the mind of an innocent person who lacked the predisposition to commit the crime charged. It is undisputed that Cindy Shomberg while suffering obvious withdrawal symptoms of heroin addiction literally begged the defendant to find them a hit. Officer Bonds admitted that "in all sincerity" the defendant went out of his way as a favor to locate and deliver the drug to them. There was no evidence presented to indicate that the defendant had been engaged in the distribution of heroin or that he had any intent to distribute same before being induced to do so by suffering Cindy. The evidence further reflects that defendant had no prior convictions for anything other than traffic offenses and that the defendant had attempted to convince Bonds to leave heroin alone.

In the recent case of United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L. Ed.2d 366, the United States Supreme Court held that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense charged does not defeat the prosecution. Nor will the mere fact of deceit defeat a prosecution, for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the government's deception implants in the mind of an innocent person the disposition to commit the alleged offense and induces its commission that the defense of entrapment comes into play.

For the reasons set out above it is our opinion that in the instant case the undisputed facts as a matter of law are sufficient to establish the defense of entrapment. The trial court did, indeed, err in failing to sustain the defendant's motion for a directed verdict of not guilty. The judgment and sentence appealed from is, accordingly, reversed and remanded with directions to dismiss.

BRETT and BUSSEY, JJ., concur.