Charles COX, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–488.

Court of Criminal Appeals of Oklahoma.

June 28, 1976.

Rehearing Denied July 22, 1976.

Berry, Nesbitt & Berry, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Charles Cox, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County,

of two offenses of Unlawful Distribution of a Controlled Dangerous Substance; his punishment was fixed in Case No. CRF–74–3860 at five (5) years' imprisonment and a Ten Dollar ($10.00) fine, and in Case No. CRF–74–3661, at Ten (10) years' imprisonment and a fine of Ten Dollars ($10.00), said sentences to run concurrently. From said judgments and sentences a timely appeal has been perfected to this Court.

The cases were consolidated for trial at the request of the defendant. Robert Bonny testified that on July 26, 1974, he was employed as an Oklahoma City Police Officer and was working in an undercover capacity; that at approximately 8:20 p.m. he went to the Camelot Club located at 10th and Shawnee in Oklahoma City. He discussed the purchase of amphetamines with the bartender, Jonas Joe Bullens, and was subsequently introduced by Bullens to the defendant. Defendant asked him if he was interested in buying some speed. Bonny replied affirmatively and was advised that the price would be $25.00 for 100 pills. He went with the defendant to a house in the 2200 block of S.W. 31st Street. Defendant entered the house and returned shortly with the amphetamines. They returned to the club and defendant gave him the tablets. Defendant requested that he give him five dollars for making the connection. He subsequently met Officer Shahan and Officer Koonce at a prearranged location, placed the evidence in an O.S.B.I. envelope, sealed it with an Oklahoma City seal no. 6711, and turned it over to the officers.

He further testified that on August 10, 1974, at approximately 8:15 p.m., he returned to the Camelot Club and observed the defendant with a person named Jimmy Clark. Defendant asked him if he wanted to· buy some more speed. Bonny replied that he probably did and was advised that the price would be the same. They proceeded to the same location and Bonny and Clark gave money to the defendant. The defendant walked up to the house, identi-

fied himself, and was admitted into the residence. He returned to the car and handed Bonny a bag containing approximately 100 tablets. Bonny again met Shahan and Koonce, placed the evidence in an O.S.B.I. envelope, sealed it with seal no. 06763, and turned it over to the officers. He identified State's Exhibits 1, 2, 3, and 4.

On cross-examination he admitted pretending to be a user, but denied that he pretended to be an addict undergoing withdrawal pains. On redirect examination he testified that defendant advised him that his connection could "front him a thousand lot of mini-bennies and that he could also buy crystal mint."

Rodney Sherrer, a forensic chemist with the Oklahoma State Bureau of Investigation, testified that on February 10, 1975, he received State's Exhibits 1 and 2 from Chief Chemist John McAuliff and was asked to analyze the contents. The exhibits had been stapled shut on one end and carried the notation "Opened by John McAuliff, 9–10–74." He testified that McAuliff picked up the exhibits from the evidence locker. He removed exhibit 3 from exhibit 1 and exhibit 4 from exhibit 2. He selected four tablets at random from exhibits 3 and 4. He performed chemical and screen tests on the tablets and was of the opinion that the substances were amphetamines.

Officer Jerry Legg testified that he was the transportation officer for confiscated drugs and narcotics. He removed exhibits 1 and 2 from the safe at the vice detail and transported them to the State Bureau Laboratory on July 31, 1974, and August 20, 1974, respectively.

Officer Robert Shahan testified that on July 26, 1974, he received exhibit 1 from Officer Bonny. He was present when Bonny sealed the envelope and identified it by the seal number. He took the exhibit to headquarters and dropped it into the narcotics safe. Officer Larry Koonce testified that on August 10, 1974, he received exhibit 2 from Officer Bonny. He ob-

served Bonny seal the envelope. He transported the exhibit to the station and placed it in the narcotics safe.

Defendant testified that he was employed as a pack welder for Robberson Steel Company. He met Officer Bonny at the Camelot Club in July, 1974. A barmaid approached him and informed him that Bonny and Joe Bullens were having a conversation about purchasing some amphetamines. Bullens walked over and inquired if he knew where he could get amphetamines for Bonny. He advised Bullens that he did not know, "but I can find out real quick, you know." [Tr. 100] The barmaid suggested that he call Richard Cordusky. He called Cordusky because the barmaid said Bonny needed them real bad. He described Bonny as nervous and perspiring but was not real sick in a physical "what a person would call sick, dying, or nothing like that." [Tr. 101]

Defendant denied being addicted to any kind of drugs, but admitted two convictions for Second Degree Burglary. He further admitted that he was presently on parole. He also admitted taking Bonny to Cordusky's home and buying the pills for him. He testified he did not make any profit on the transaction and did not ask Bonny for $5.00 for his trouble. He denied selling drugs to any other person.

■ The first assignment of error asserts that the trial court erred in overruling the Motion to Quash in that there existed a four-month delay between the alleged distribution of amphetamines and the filing of the Information, thus depriving the defendant of his right to due process as provided by the Fourteenth Amendment to the United States Constitution. In dealing with a similar question in *Miller v. State*, Okl.Cr., 522 P.2d 642, we stated:

"... We hold, however, that the three months delay between the offense and the filing of the charge was not only well within the three year statute of limitations but was a procedure necessary to the effective enforcement of our laws. If we were to require that every defendant be confronted immediately after conducting every transaction with an undercover agent then the purpose of such undercover work would be destroyed and the practice of using undercover agents in the detection of drug distribution or any other contraband business would be useless."

We, therefore, find this assignment of error to be without merit.

■ The second assignment of error is two-fold, first asserting that the trial court erred in admitting evidence that tended to establish that the defendant was guilty of crimes other than those for which he stood charged, and secondly that hearsay evidence was improperly admitted. We need only observe that the evidence of other crimes complained of by the defendant was introduced only after the defendant opened the door to such testimony in cross-examination, as follows:

"Q. As far as you know, Charles Cox had never gone as an errand boy or otherwise and gotten pills for anybody else prior to that time?

"A. Like I say, all I know is that he was introduced to me as a speed dealer and that is how I bought speed." [Tr. 47]

The record does not reflect that defendant objected to the response. In *Washington v. State*, Okl.Cr., 525 P.2d 1378, we stated:

"... The intimations and inferences of other crimes that defendant now complains of arose solely as a consequence of inquiries by defense counsel. On cross-examination of law enforcement officers, defense counsel began the line of questioning regarding the circumstances of defendant's arrest. He pursued that line of questioning in spite of the trial judge's timely cautionary instruction that once opened, the door protecting defendant from testimony regarding the circumstances of his arrest would remain open for further inquiry by the prosecution. ... As the Attorney General correctly stated in his brief, the

questions posed by the district attorney on re-direct examination were proper, being entirely within the scope of the cross-examination. See *Hensley v. State,* Okl.Cr., 502 P.2d 1284 (1972) and *Kennedy v. State,* Okl.Cr., 400 P.2d 461 (1965)."

■ Defendant next asserts that the trial court erred in allowing hearsay evidence by witness Sherrer that John Mc-Auliff told him that he had previously opened the envelopes. We agree with the defendant that the statement was, in fact, hearsay. However, in view of all the facts and circumstances we do not deem the reception of the hearsay evidence to constitute reversible error. See *Hay v. State,* Okl.Cr., 447 P.2d 447 and *Brewer v. State,* Okl.Cr., 414 P.2d 559. We observe that the exhibits which were introduced into evidence reflect on their face that they were opened by "J.P.M." who was identified by witness Sherrer as John McAuliff.

■ The third assignment of error contends that the trial court erred in failing to sustain the demurrer to the evidence at the close of the evidence, in that the evidence established entrapment as a matter of law. Defendant cites as authority *Grate v. State,* Okl.Cr., 529 P.2d 1001, wherein this Court held that the appellant was entrapped as a matter of law because the undercover agent feigned withdrawal symptoms and begged the defendant to obtain heroin for him. We are of the opinion that *Grate* is clearly distinguishable from the instant case. The testimony of Officer Bonny and the defendant differed sharply. Bonny denied feigning withdrawal symptoms and testified defendant initiated the conversations about the sales. Defendant testified that Bonny appeared to be perspiring and nervous.

In *Kite v. State,* Okl.Cr., 490 P.2d 1402 (1971), we cited with approval the case of *Riddle v. State,* Okl.Cr., 373 P.2d 832 (1962), wherein we stated:

" 'Whether a defendant has been entrapped is to be determined by the jury, unless it can be decided as a question of law upon *undisputed facts* sufficient to

to [sic] establish entrapment.' " [Emphasis added]

See, also *Wixon v. State,* Okl.Cr., 527 P.2d 333 (1974). We, therefore, conclude that the trial court properly submitted the question of entrapment for the jury's consideration.

■ The fourth assignment of error asserts that the trial court erred in refusing to admit the following evidence offered by the defendant:

"Evidence concerning the scope and nature of R. Bonny's undercover activities and evidence concerning potential leniency by the prosecution toward an individual conceivably an informant who at the behest of R. Bonny set up the purported drug transaction."

In *Smith v. State,* Okl.Cr., 520 P.2d 816, we stated:

". . . The scope of cross-examination of witnesses rests largely within the discretion of the trial court and it is not error for the court to limit examination of collateral matters not germane to the issue. *Snow v. State,* Okl.Cr., 481 P.2d 157 (1970). See also, *Austin v. State,* 28 Okl.Cr. 73, 228 P. 1113 (1924). . . ."

We have examined the entire record and are of the opinion that the trial court did not abuse its discretion limiting the extent of cross-examination of Officer Bonny.

■ The fifth assignment of error contends that the trial court erred in failing to sustain the demurrers to evidence and that the prosecution failed to establish that the alleged sales of amphetamines involved a traceable or usable quantity of the drug. We disagree. In *Spriggs v. State,* Okl.Cr., 511 P.2d 1139, when a similar proposition was asserted, we stated:

"We are of the opinion that the better rule was stated by the Wisconsin Court in *State v. Dodd,* 28 Wis.2d 643, 137 N.W.2d 465 wherein the Court stated:

'The majority rule seems to be that possession of a modicum of an illegal drug is sufficient to bring the defendant within the purview of the statute.'

"The Court further stated:

'A modicum means a little or small quantity and this is to be understood in relationship to the nature of the drug. The amount need not be a usable amount and it was said the quantity of the drug possessed is not material. *Peachie v. State,* [203 Md. 239, 100 A. 2d 1], supra. This view is taken because the statute does not prescribe any minimum amount which must exist. Narcotics are contraband and dangerous causing untold harm to users and to the public by illegal use. A more liberal interpretation favorable to drug addicts and those illegally dealing in narcotics cannot reasonably be given.' "

■ The final assignment of error asserts that the cumulative effect of the previously set forth errors requires reversal. We must again disagree. We have previously found one error concerning the admission of hearsay evidence on a point established by other competent evidence. We therefore find the final assignment of error to be without merit. The judgments and sentences are accordingly *AF-FIRMED*.

BLISS, J., concurs.

BRETT, P. J., concurs in results.